1    JOHN B. SULLIVAN (State Bar No. 96742)
     JON D. IVES (State Bar No. 230582)
2    jdi@severson.com
     EDWARD R. BUELL, III (State Bar No. 240494)
3    erb@severson.com
     SEVERSON & WERSON
4    A Professional Corporation
     One Embarcadero Center, Suite 2600
5    San Francisco, California 94111
     Telephone: (415) 398-3344
6    Facsimile: (415) 956-0439

7    Attorneys for Defendants
     OCWEN LOAN SERVICING, LLC; GMAC
8    MORTGAGE, LLC; EXECUTIVE TRUSTEE
     SERVICES, LLC DBA ETS SERVICES, LLC;
9    US BANK NATIONAL ASSOCIATION AS
     TRUSTEE FOR THE GREENPOINT
10   MORTGAGE FUNDING TRUST, MORTGAGE
     PASS-THROUGH CERTIFICATES, SERIES
11   2006-AR7; AND MORTGAGE ELECTRONIC
     REGISTRATION SYSTEMS, INC.

12

13                  UNITED STATES DISTRICT COURT

14       NORTHERN DISTRICT OF CALIFORNIA — SAN JOSE DIVISION

15

16   PATRICIA C. MORAN,                    Case No. 3:13-cv-04981-LHK

17            Plaintiff,                    **DEFENDANTS' NOTICE OF HEARING
                                            ON MOTION, MOTION TO DISMISS
18       vs.                                THE FIRST AMENDED COMPLAINT,
                                            AND MEMORANDUM OF POINTS AND
19   GMAC MORTGAGE, LLC, et al.,            AUTHORITIES IN SUPPORT THEREOF**

20            Defendants.                   Date:     June 5, 2014
                                            Time:     1:30 p.m.
21                                          Crtrm.:   8, Fourth Floor
                                            Judge:    Hon. Lucy H. Koh
22

23

24

25

26

27

28

21000.0090/3222057.1

Motion to Dismiss First Amended Complaint

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that on June 5, 2014, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 4 of the above-entitled Court, located at 280 South 1st Street, San Jose, California 95113, before the Honorable Lucy H. Koh, Defendants Ocwen Loan Servicing, LLC; GMAC Mortgage, LLC; Executive Trustee Services, LLC dba ETS Services, LLC; US Bank National Association as Trustee for the GreenPoint Mortgage Funding Trust, Mortgage Pass-Through Certificates, Series 2006-AR7; and Mortgage Electronic Registration Systems, Inc. will, and hereby do, move to dismiss Plaintiff Patricia C. Moran's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The First Amended Complaint fails to state a claim upon which relief may be granted as explained further in the accompanying memorandum of points and authorities.

This motion is based on this motion and notice of motion, the accompanying memorandum of points and authorities, the request for judicial notice, the pleadings and records on file in this action, and any further briefs, evidence, authorities, or argument presented before or at the hearing of this motion.  Defendants respectfully request an order dismissing the First Amended Complaint for failure to state a claim.

DATED:  April 28, 2014

SEVERSON & WERSON
A Professional Corporation

By: _____/s/_ _Jon D. Ives_____
        Jon D. Ives

Attorneys for Defendants
OCWEN LOAN SERVICING, LLC; GMAC MORTGAGE, LLC; EXECUTIVE TRUSTEE SERVICES, LLC DBA ETS SERVICES, LLC; US BANK NATIONAL ASSOCIATION AS TRUSTEE FOR THE GREENPOINT MORTGAGE FUNDING TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-AR7; AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

# TABLE OF CONTENTS

Page

I.      INTRODUCTION.................................................................................................. 1

II.     APPLICABLE LAW AND PERTINENT FACTS............................................. 2

III.    THE LATE TRANSFER THEORY SUPPORTS NO VIABLE CLAIM ........................... 4

        A.      Moran Agreed Her Loan Could Be Sold................................................ 4

        B.      Moran Lacks Standing To Assert Breach Of Any Trust Requirement ................. 5

        C.      A Transfer Need Not Be Publicly Recorded .............................................. 6

        D.      The MERS Contentions Have Been Put To Rest ....................................... 8

        E.      The "Split" Note And Deed Theory Is Wrong ........................................... 9

        F.      Any Reliance On *Glaski* Will Be Misplaced.............................................. 10

IV.     MORAN'S SECURITIZATION THEORY DOES NOT SUPPORT HER
        WRONGFUL FORECLOSURE CLAIM ................................................................. 14

V.      MORAN CANNOT QUIET TITLE WITHOUT REPAYING WHAT SHE
        BORROWED ........................................................................................................ 15

VI.     THE SLANDER OF TITLE CLAIM FAILS BECAUSE RECORDING
        FORECLOSURE DOCUMENTS IS PRIVILEGED ............................................ 16

VII.    THE FRAUD CLAIM LACKS REQUIRED ELEMENTS AND IS NOT
        PLEADED WITH PARTICULARITY .................................................................. 17

VIII.   MORAN MAY NOT CANCEL HER LOAN AND KEEP ITS PROCEEDS ................. 19

IX.     CIVIL CODE SECTION 2924.17 DID NOT TAKE EFFECT UNTIL 2013 ................. 20

X.      THERE IS NO CAUSATION OR INJURY FOR A § 17200 ACTION ........................ 20

XI.     THE LACK OF A COGNIZABLE DUTY UNDERCUTS ANY
        NEGLIGENCE CLAIM........................................................................................ 21

XII.    UNJUST ENRICHMENT IS NOT A RECOGNIZED CAUSE OF ACTION ................. 22

XIII.   MORAN'S LAWSUIT ALSO FAILS BECAUSE SHE DID NOT GIVE
        PRESUIT NOTICE AND OPPORTUNITY TO CURE......................................... 23

XIV.    CONCLUSION ..................................................................................................... 24

# TABLE OF AUTHORITIES

Page

**CASES**

*Abdallah v. United Sav. Bank,*
   43 Cal.App.4th 1101 (1996)................................................................14

*Ann M. v. Pac. Plaza Shopping Ctr.,*
   6 Cal.4th 666 (1993)................................................................21

*Apostol v. CitiMortgage, Inc.,*
   2013 WL 6328256 (N.D. Cal. 2013)................................................................11

*Arabia v. BAC Home Loans Serv., L.P.,*
   208 Cal.App.4th 462 (2012)................................................................11

*Arnolds Mgmt. Corp. v. Eischen,*
   158 Cal.App.3d 575 (1984)................................................................14

*Ashcroft v. Iqbal,*
   129 S.Ct. 1937 (2009)................................................................2

*Bank of Am., Nat'l Ass'n, v. Bassman FBT, L.L.C.,*
   981 N.E.2d 1 (Ill. App. Ct. 2012)................................................................12

*Bank of America, N.A. v. Roberts*
   217 Cal.App.4th 1386 (2013)................................................................20

*Bartold v. Glendale Fed. Bank,*
   81 Cal.App.4th 816 (2000)................................................................19

*Bateman v. Countrywide Home Loans,*
   2012 WL 5593228 (D. Haw. 2012)................................................................5

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)................................................................2

*Bennett v. One West Bank,*
   2011 WL 2493699 (S.D. Cal. 2011)................................................................8

*Boza v. U.S. Bank Nat'l Ass'n,*
   2013 WL 5943160 (C.D. Cal. 2013)................................................................11

*Bridge v. Aames Cap. Corp.,*
   2010 WL 3834059 (N.D. Ohio 2010)................................................................5

*Bui v. OneWest Bank FSB,*
   2014 WL 507385 (Bankr. N.D. Cal. 2014)................................................................11

*Building Permit Consultants, Inc. v. Mazur*,
  122 Cal.App.4th 1400 (2004)..................................................................18

*Calvo v. HSBC Bank USA, N.A.*,
  199 Cal.App.4th 118 (2011)................................................................7, 9

*Conrad v. Bank of Am.*,
  45 Cal.App.4th 133 (1996)....................................................................18

*Copsey v. Sacramento Bank*,
  133 Cal. 659 (1901)................................................................................15

*In re Correia*,
  452 B.R. 319 (1st Cir. BAP 2011) ...........................................................6

*Covarrubias v. Fed. Home Loan Mortg. Corp.*,
  2014 WL 311060 (S.D. Cal. 2014) .........................................................11

*Davies v. Deutsche Bank Nat'l Trust Co.*,
  — Fed.Appx. —, 2014 WL 1152800 (9th Cir. BAP) ...........................11

*Debrunner v. Deutsche Bank Nat'l Trust Co.*,
  204 Cal.App.4th 433 (2012)...........................................................7, 8, 13

*Dennis v. Wachovia Bank, FSB*,
  2011 WL 181373 (N.D. Cal. 2011) .........................................................13

*Deutsche Bank Nat'l Trust Co. v. Stefiej*,
  2013 WL 1103903 (N.D. Ill. 2013) .........................................................12

*Diunugala v. JP Morgan Chase Bank, N.A.*,
  2013 WL 5568737 (S.D. Cal. 2013) ..................................................10, 11

*Durell v. Sharp Healthcare*,
  183 Cal.App.4th 1350 (2010)..................................................................22

*Edward Brown & Sons v. City & County of San Francisco*,
  36 Cal.2d 272 (1950)................................................................................9

*Fladeboe v. Am. Isuzu Motors, Inc.*,
  150 Cal.App.4th 42 (2007).....................................................................18

*Flatley v. Mauro*,
  39 Cal.4th 299 (2006).............................................................................17

*Flores v. EMC Mortg. Co.*,
  — F.Supp.2d —, 2014 WL 641097 (E.D. Cal. 2014)............................11

*Flores v. GMAC Mortg., LLC*,
  2013 WL 2049388 (N.D. Cal. 2013) .........................................................5

*Fontenot v. Wells Fargo Bank, N.A.*,
   198 Cal.App.4th 256 (2011) ............................................................. *passim*

*FPCI RE-HAB 01 v. E&G Invs., Ltd.*,
   207 Cal.App.3d 1018 (1989) ..................................................................15

*Gavina v. Smith*,
   25 Cal.2d 501 (1944) .............................................................................9

*Gerber v. First Horizon Home Loan Corp.*,
   2006 WL 581082 (W.D. Wash. 2006) ....................................................24

*Gieseke v. Bank of Am., N.A.*,
   2014 WL 718463 (N.D. Cal. 2014) .........................................................11

*Gilmore v. Am. Mortg. Network*,
   2012 WL 6193843 (C.D. Cal. 2012) .........................................................6

*Glaski v. Bank of Am., Nat'l Ass'n*,
   218 Cal.App.4th 1079 (2013) ............................................................ *passim*

*In re Glenfed, Inc. Sec. Litig.*,
   42 F.3d 1541 (9th Cir. 1994) (en banc) ..................................................18

*Gomes v. Countrywide Home Loans, Inc.*,
   192 Cal.App.4th 1149 (2011) ...................................................8, 9, 13, 14

*Graham v. ReconTrust Co., N.A.*,
   2012 WL 1035712 (D. Or. 2012) ..............................................................6

*Grove v. Mead Sch. Dist. No. 354*,
   753 F.2d 1528 (9th Cir. 1985) ..................................................................6

*Haynes v. EMC Mortg. Corp.*,
   205 Cal.App.4th 329 (2012) .....................................................................7

*Herrera v. Federal Nat'l Mortg. Ass'n*,
   205 Cal.App.4th 1495 (2012) .....................................................4, 8, 9, 13

*Hollowell v. Alliance Bancorp, Inc.*,
   2011 WL 2884801 (N.D. Cal. 2011) .......................................................24

*Horvath v. Bank of New York, N.A.*,
   2010 WL 538039 (E.D. Va. 2010) ...........................................................10

*Jacob B. v. County of Shasta*,
   40 Cal.4th 948 (2007) .............................................................................17

*James v. Recontrust Co.*,
   2011 WL 3841558 (D. Or. 2011) ............................................................10

*Jenkins v. JP Morgan Chase Bank, N.A.*,
   216 Cal.App.4th 497 (2013) ............................................................................ *passim*

*Jogani v. Super. Ct.*,
   165 Cal.App.4th 901 (2008) ........................................................................................23

*Johnson v. Countrywide Home Loans, Inc.*,
   2010 WL 5138392 (E.D. Va. 2010) ............................................................................24

*Jones v. Deutsche Bank Nat'l Trust Co.*,
   2013 WL 3455716 (N.D. Tex. 2013) ..........................................................................11

*Karlsen v. Am. Sav. & Loan Ass'n*,
   15 Cal.App.3d 112 (1971) ...........................................................................................14

*Knapp v. Doherty*,
   123 Cal.App.4th 76 (2004) ..........................................................................................15

*Kwikset Corp. v. Superior Court*,
   51 Cal.4th 310 (2011) ..................................................................................................21

*Labra v. Cal-W. Reconveyance Corp.*,
   2010 WL 889537 (N.D. Cal. 2010) ...............................................................................9

*Lane v. Vitek Real Estate Indus. Grp.*,
   713 F.Supp.2d 1092 (E.D. Cal. 2010) ...........................................................................9

*Lawson v. CitiCorp Trust Bank, FSB*,
   2011 WL 3439223 (E.D. Cal. 2011) ..............................................................................8

*Leonard v. Bank of Am. etc. Ass'n*,
   16 Cal.App.2d 341 (1936) ...........................................................................................15

*Lindsay v. America's Wholesale Lender*,
   2012 WL 83475 (C.D. Cal. 2012) ..................................................................................6

*Liu v. T&H Machine, Inc.*,
   191 F.3d 790 (7th Cir. 1999) .........................................................................................5

*Low v. LinkedIn Corp.*,
   900 F.Supp.2d 1010 (N.D. Cal. 2012) .........................................................................22

*Lueras v. BAC Home Loans Serv., LP*,
   221 Cal.App.4th 49 (2013) ..........................................................................................22

*In re Macklin*,
   495 B.R. 8 (Bankr. E.D. Cal. 2013) ...............................................................................7

*Madlaing v. JPMorgan Chase Bank, N.A.*,
   2013 WL 2403379 (E.D. Cal. 2013) ............................................................................16

*Manhattan Loft, LLC v. Mercury Liquors, Inc.*,
   173 Cal.App.4th 1040 (2009)..................................................................17

*In re Marks*,
   2012 WL 6554705 (9th Cir. BAP 2012) ....................................................6

*Marty v. Wells Fargo Bank*,
   2011 WL 1103405 (E.D. Cal. 2011) .........................................................16

*McBride v. Boughton*,
   123 Cal.App.4th 379 (2004).....................................................................22

*McGough v. Wells Fargo Bank, N.A.*,
   2012 WL 2277931 (N.D. Cal. 2012)...........................................................6

*McGough v. Wells Fargo Bank, N.A.*,
   2012 WL 5199411 (N.D. Cal. 2012).........................................................20

*Melchior v. New Line Prods., Inc.*,
   106 Cal.App.4th 779 (2003).....................................................................23

*Merino v. EMC Mortg. Corp.*,
   2010 WL 1039842 (E.D. Va. 2010) ..........................................................10

*Meyer v. Wells Fargo Bank, N.A.*,
   2013 WL 6407516 (N.D. Cal. 2013).........................................................22

*Michael J. Weber Living Trust v. Wells Fargo Bank, N.A.*,
   2013 WL 1196959 (N.D. Cal. 2013).........................................................20

*Miller v. Bechtel Corp.*,
   33 Cal.3d 868 (1983)................................................................................20

*Miller v. Provost*,
   26 Cal.App.4th 1703 (1994).....................................................................16

*Mobine v. OneWest Bank, FSB*,
   2012 WL 243351 (S.D. Cal. 2012) ...........................................................22

*Morris v. BMW of N. Am., LLC*,
   2007 WL 3342612 (N.D. Cal. 2007)..........................................................18

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009)......................................................................2

*Mullis v. United States Bankr. Ct.*,
   828 F.2d 1385 (9th Cir. 1987)....................................................................2

*Murphy v. Allstate Ins. Co.*,
   17 Cal.3d 937 (1976)................................................................................12

*Myers v. Philip Morris Cos.*,
    28 Cal.4th 828 (2002)........................................................................................20

*Newman v. Bank of New York Mellon*,
    2013 WL 5603316 (E.D. Cal. 2013) ................................................................11

*Nguyen v. Calhoun*,
    105 Cal.App.4th 428 (2003)........................................................................14, 15

*Niyaz v. Bank of Am.*,
    2011 WL 63655 (E.D. Va. 2011) .....................................................................24

*Pantoja v. Countrywide Home Loans, Inc.*,
    640 F.Supp.2d 1177 (N.D. Cal. 2009) ...............................................................9

*In re Parker*,
    2010 WL 3927732 (Bankr. D. Vt. 2010) .........................................................12

*Permito v. Wells Fargo Bank, N.A.*,
    2012 WL 1380322 (N.D. Cal. 2012)...................................................................7

*Preciado v. Wells Fargo Home Mortg.*,
    2013 WL 1899929 (N.D. Cal. 2013)...................................................................16

*Pugh v. JPMorgan Chase Bank, N.A.*,
    2013 WL 5739147 (E.D. Cal. 2013) ................................................................11

*Pulver v. Avco Fin. Servs.*,
    182 Cal.App.3d 622 (1986)................................................................................17

*Quintero Family Trust v. OneWest Bank, F.S.B.*,
    2010 WL 392312 (S.D. Cal. 2010) ....................................................................7

*Rivac v. Ndex West LLC*,
    2013 WL 6662762 (N.D. Cal. 2013)..................................................................11

*Roberts v. Ball, Hunt, Hart, Brown & Baerwitz*,
    57 Cal.App.3d 104 (1976)..................................................................................18

*Robertson v. DLJ Mortg. Cap., Inc.*,
    2012 WL 4840033 (D. Ariz. 2012) .....................................................................5

*Robinson v. Bank of Am., N.A.*,
    2014 WL 60969 (N.D. Cal. 2014)......................................................................22

*Robinson v. Countrywide Home Loans, Inc.*,
    199 Cal.App.4th 42 (2011)..................................................................................8

*Rodriguez v. Oto*,
    212 Cal.App.4th 1020 (2013).............................................................................12

*Rose v. J.P. Morgan Chase, N.A.*
   2014 WL 546584 (E.D. Cal. 2014) .................................................................20

*In re Salazar*,
   470 B.R. 557 (S.D. Cal. 2012) .......................................................................7

*Sami v. Wells Fargo Bank*,
   2012 WL 967051 (N.D. Cal. 2012) ................................................................6

*San Francisco Unified Sch. Dist. v. W.R. Grace & Co.*,
   37 Cal.App.4th 1318 (1995) .........................................................................22

*Sandri v. Capital One, N.A.*,
   2013 WL 5925655 (Bankr. N.D. Cal. 2013) ...............................................11

*Sanguinetti v. Citi Mortg., Inc.*,
   2013 WL 4838765 (N.D. Cal. 2013) ............................................................22

*Santens v. Los Angeles Fin. Co.*,
   91 Cal.App.2d 197 (1949) ..............................................................................7

*Saxon Mortg. Servs., Inc. v. Hillery*,
   2009 WL 2435926 (N.D. Cal. 2009) ............................................................10

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
   806 F.2d 1393 (9th Cir. 1986) .....................................................................18

*Seely v. White Motor Co.*,
   63 Cal.2d 9 (1965) .......................................................................................22

*Sepehry-Fard v. Aurora Bank FSB*,
   2013 WL 2239820 (N.D. Cal. 2013) ............................................................20

*Shuster v. BAC Home Loans Servicing, LP*,
   211 Cal.App.4th 505 (2012) .........................................................................13

*Silberg v. Anderson*,
   50 Cal.3d 205 (1990) ....................................................................................17

*Siliga v. Mortg. Elec. Registration Systems, Inc.*,
   219 Cal.App.4th 75 (2013) ....................................................................11, 14

*Snell v. Deutsche Bank Nat'l Trust Co.*,
   2014 WL 325147 (E.D. Cal. 2014) ..............................................................11

*Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*,
   49 Cal.App.4th 472 (1996) ...........................................................................21

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ..........................................................................2

*Stebley v. Litton Loan Servicing, LLP*,
    202 Cal. App.4th 522 (2011)........................................................................................16

*Stephenson v. Argonaut Ins. Co.*,
    125 Cal.App.4th 962 (2004)........................................................................................18

*Subramani v. Wells Fargo Bank N.A.*,
    2013 WL 5913789 (N.D. Cal. 2013)...........................................................................11

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007)......................................................................................19

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002) .....................................................................................................2

*Tapia v. U.S. Bank, N.A.*,
    718 F.Supp.2d 689 (E.D. Va. 2010)...........................................................................10

*In re Tovar*,
    2012 WL 3205252 (9th Cir. BAP)..............................................................................11

*Tran v. Bank of New York*,
    2014 WL 1225575 (S.D.N.Y. 2014) ..........................................................................12

*United States Cold Storage v. Great W. Sav. & Loan Ass'n*,
    165 Cal.App.3d 1214 (1985).................................................................................14, 15

*Vess v. Ciba-Geigy Corp.*,
    317 F.3d 1097 (9th Cir. 2003)....................................................................................18

*Warth v. Seldin*,
    422 U.S. 490 (1975) ......................................................................................................5

*Williams v. U.S. Bank Nat'l Ass'n*,
    2011 WL 2293260 (E.D. Mich. 2011) .........................................................................5

*Wilson v. Pac. Coast Title Ins. Co.*,
    106 Cal.App.2d 599 (1951)...........................................................................................7

*Wurtzberger v. Resmae Mortg. Corp.*,
    2010 WL 1779972 (E.D. Cal. 2010) ............................................................................9

*Yau v. Deutsche Bank Nat'l Trust Co.*,
    2011 WL 5402393 (C.D. Cal. 2011).............................................................................7

**STATUTES, RULES**

Business and Professions Code
　　§ 17200 ...................................................................................................................20, 21

Civil Code
　　§ 1095 ................................................................................................................................21
　　§ 1691 ................................................................................................................................19
　　§ 1692 ................................................................................................................................19
　　§ 1708 ................................................................................................................................21
　　§ 1709 ..........................................................................................................................18, 21
　　§ 2924 ..........................................................................................................................16, 17
　　§ 2924.17 ...........................................................................................................................20
　　§ 2932.5 ...............................................................................................................................7
　　§ 3515 ..................................................................................................................................9
　　§ 3517 ..................................................................................................................................9
　　§ 47 .............................................................................................................................16, 17

Code of Civil Procedure
　　§ 337 ..................................................................................................................................20

Penal Code
　　§ 115 ..................................................................................................................................21
　　§ 532 ..................................................................................................................................21

New York's Estates, Powers & Trust Law ..............................................................................12
　　§ 7-2.4 ...............................................................................................................................12

Uniform Commercial Code
　　UCC cmt. ¶ 9 .....................................................................................................................10
　　UCC § 9203(g) ...................................................................................................................10

Federal Rule of Civil Procedure
　　Rule 9 ..........................................................................................................................18, 19
　　Rule 12 ...........................................................................................................................1, 2

**OTHER AUTHORITIES**

4 Miller & Starr, Cal. Real Estate, § 10:38 (3d ed. 2011) .......................................................9

4 Miller & Starr, Cal. Real Estate § 10:212 (3d ed. 2003) ....................................................14

29 Williston on Contracts § 74:50 (4th ed.) ............................................................................5

UCC Permanent Editorial Bd., *Report: Application of the Uniform Commercial Code to Selected Issues Relating to Mortgage Notes*, p. 12 (Nov. 14, 2011) ...........9, 10, 11, 12

http://www.uniformlaws.org/Shared/Committees_Materials/
　　PEBUCC/PEB_Report_111411.pdf...................................................................................10

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Defendants Ocwen Loan Servicing, LLC; GMAC Mortgage, LLC ("GMAC"); Executive Trustee Services, LLC dba ETS Services, LLC ("ETS"); US Bank National Association as Trustee for the GreenPoint Mortgage Funding Trust, Mortgage Pass-Through Certificates, Series 2006-AR7; and Mortgage Electronic Registration Systems, Inc. ("MERS") respectfully submit this motion to dismiss Plaintiff Patricia C. Moran's first amended complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6).

Despite being granted leave to amend to file a FAC after not responding at all to defendants' original motion to dismiss, Moran has submitted an "amended" complaint nearly identical to the original.  It does nothing to correct the original's deficiencies.

Like its predecessor, the FAC attempts to spin nine causes of action based on the supposedly late transfer of Moran's $1,000,000 home loan to a securitized trust, contrary to the terms of the trust's pooling and servicing agreement ("PSA").

Moran's late-transfer-to-securitized-trust claims are all based on the assumption that her loan was not transferred to the trust until an assignment of her deed of trust was recorded.  That assumption is false.  A promissory note may be transferred by endorsement and delivered without any public recordation.  The recording of an assignment of deed of trust does not demonstrate a note was not transferred earlier.  So the facts Moran alleges does not support her conclusion that her loan was transferred to the securitized trust after its closing date.

Moreover, as held in *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal.App.4th 497 (2013), and in numerous federal district court opinions in the last two years, a borrower cannot state a claim based on a supposedly defective transfer of her loan to a closed investment trust. Borrowers are not parties to the trust and have no standing to enforce the PSA's terms.  Borrowers are not prejudiced by any flaw in the assignment of their loan to a new owner.  If the loan's transfer was defective, the loan's owner may be harmed, but the borrower is not.

Moran's FAC fails as a matter of law to state a claim for which relief may be granted.  It should be dismissed.

## II.  APPLICABLE LAW AND PERTINENT FACTS

"To survive a motion to dismiss [under Fed. R. Civ. Proc. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 12(b)(6).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S.Ct. at 1949; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  While the Court accepts as true the well-pleaded facts of a complaint when deciding a motion to dismiss, this presumption does not apply to naked assertions devoid of further factual enhancement or conclusory allegations of law.  *See Iqbal*, 129 S.Ct. at 1949-50; *Moss*, 572 F.3d at 969.  Moreover, the complaint must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).  Finally, facts subject to judicial notice may be considered on a motion to dismiss and these facts trump conclusory allegations to the contrary.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Mullis v. United States Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

The alleged and judicially noticeable facts are stated below.  Defendants do not concede the truth of any of the facts Moran alleges.

On September 13, 2006, Moran borrowed $1,000,000 from GreenPoint Mortgage Funding, Inc. ("GreenPoint") and signed a promissory note agreeing to repay the mortgage loan.  *See* FAC, Ex. A.  She secured this loan with a trust deed encumbering property located at 10920 Ridgeview Avenue, San Jose, California 95127.  *See id.*, Ex. B.  MERS was designated as the beneficiary under the trust deed and Marin Conveyancing Corp. was named the trustee.  *Id.*

On April 14, 2009, MERS substituted ETS in as the new trustee under the trust deed.  *See* Defs.' Request for Judicial Notice ("RJN"), Ex. A.  It recorded a substitution of trustee the next day.  *Id.*

Motion to Dismiss First Amended Complaint

ETS recorded a notice of default on April 15, 2009, showing that Moran defaulted on the loan and was $35,957.57 in arrears at that time.  *See* RJN, Ex. B.  Because she did not cure her default, ETS recorded a notice of trustee's sale.  *See* RJN, Ex. C.

Moran and GMAC entered into a loan modification and memorialized their agreement to modify the terms of Moran's loan with the Santa Clara County Recorder's Office.  *See* FAC, Ex. C.  Because the loan was modified, ETS rescinded the notice of default.  *See* RJN, Ex. D.

On April 18, 2011, MERS assigned its interests under the trust deed to GMAC and recorded an assignment of deed of trust on April 26, 2011.  *See* RJN, E.

In April 2012, GMAC redesignated ETS as the substitute trustee under the trust deed.  *See* RJN, Ex. F.  ETS recorded a notice of default showing that Moran was $68,492.79.  *See* RJN, Ex. G.  Because she did not cure her default, ETS recorded a notice of trustee's sale on July 31, 2012.  *See* RJN, Ex. H.

Moran filed this lawsuit on September 4, 2013.  She alleges that because of "fraudulent and/or otherwise defective assignments" of her loan," "none of the defendants … is a beneficiary or real party in interest under [her] DOT having the power to enforce" her promissory note and because of a "botched securitization," "not one of the defendants here has the legal right and authority to collect [her] mortgage payments or to exercise the power of sale under the DOT." FAC, 6:17-26.[1]

Moran alleges that GreenPoint, the original lender, sold her loan to a securitized trust, but did not effectively transfer her loan before the trust's closing date, November 30, 2006.  *See id.*, 6:27-7:19.

She contends this violated the PSA governing the trust, resulting in US Bank, the trust's trustee, not having any legal or equitable interest in her mortgage, and not having any power to appoint GMAC as the loan servicer.  *See* FAC, pp. 6, 7, 12.   Since GMAC was not properly

---

[1] Because the numbering of the FAC's paragraphs resets to one after each heading, defendants cite to the page and line numbers.

1  appointed, it "is not a valid servicer on Plaintiff's mortgage loan," and fraudulently induced Moran

2  to make mortgage payments to it.  *Id.*, 7:20-25.

3       In the meantime, defendants conspired with MERS to "cover up the botched

4  securitization" by recording "an out-of-date and invalid assigned of Plaintiff's DOT on April 26,

5  2011" to GMAC.  *Id.*, 7:6-9.

6  ### III.  THE LATE TRANSFER THEORY SUPPORTS NO VIABLE CLAIM

7       Moran's post-closing date transfer theory was rejected in *Jenkins*, and by federal courts

8  around the country.  This theory is based on the faulty assumption that Moran's loan was not

9  transferred to the trust before its closing date because the assignment of Moran's deed of trust was

10  not recorded until after that date.  The fault in this assumption has been laid bare.  As explained in

11  *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal.App.4th 256, 272 (2011), and reiterated in *Herrera*

12  *v. Federal Nat'l Mortg. Ass'n*, 205 Cal.App.4th 1495, 1506 (2012):  "[S]ince the assignment of the

13  debt (the promissory note), as opposed to the security (the DOT), commonly is not recorded, the

14  lender could have assigned the note to the beneficiary in an unrecorded document not disclosed to

15  plaintiffs."  The public recording of the assignment of deed of trust raises no valid inference that

16  her note was not transferred before the trust's closing date.

17       In addition, Moran lacks standing to assert supposed violations of the PSA governing the

18  trust or any defect in her loan's transfer between third parties.  Such transfers resulted in no

19  change in her obligations under the loan and she suffered no prejudice from any faulty transfer.

20  **A.**     **Moran Agreed Her Loan Could Be Sold**

21       It might be noted first that this theory overlooks the fact that Moran agreed that the

22  originating lender could transfer the loan and do so without notice.  Moran declared on the first

23  page of her Adjustable Rate Promissory Note that "I understand that Lender may transfer this

24  Note."  FAC, Ex. A.  Likewise, she signed the Deed of Trust that provides that "The Note or a

25  partial interest in the Note (together with this Security Instrument) can be sold one or more times

26  without prior notice to Borrower."  FAC, Ex. B, § 20.  She agreed in writing that her loan could be

27  transferred and sold without notice to her and therefore cannot now complain of the very thing she

28  agreed to in her loan contracts.

**B.      Moran Lacks Standing To Assert Breach Of Any Trust Requirement**

Even were Moran's late-transfer theory factually true, it does not entitle Moran to any relief.  If the securitized trust, or the servicer appointed by the securitized trust, falsely claimed an interest in the loan, it is the unknown true owner that was harmed.  And only the "true owner" has standing to sue regarding the supposedly faulty transfer.

Because their rights are unaffected, borrowers lack standing to sue based on supposed defects in loan transfers.[2]  As explained in *Fontenot*, 198 Cal.App.4th at 272, if "MERS indeed lacked authority to make the assignment, the true victim was not plaintiff but the original lender, which would have suffered the unauthorized loss of a $1 million promissory note."  *See also Jenkins*, 216 Cal.App.4th at 515 ("even if any subsequent transfers of the promissory note were invalid, Jenkins is not the victim of such invalid transfers because her obligations under the note remained unchanged.").

Since an assignment "merely substituted one creditor for another, without changing [the plaintiff's] obligations under the note," the borrower was not harmed even if there was a defect in the manner in which the loan was transferred.  *Fontenot*, 198 Cal.App.4th at 272.

The same reasoning applies here.  If the transfer of Moran's loan was defective, it was the loan's owner, not Moran who was harmed by another party assigning its loan without authority or foreclosing on the loan without the true owner's consent.  Only the loan's true owner may sue to protect its interests.  *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) (a "plaintiff generally must

---

[2] *See, e.g., Liu v. T&H Machine, Inc.*, 191 F.3d 790, 797 (7th Cir. 1999) (a third party "lacks standing to attack any problems with the reassignment."); *Flores v. GMAC Mortg., LLC*, 2013 WL 2049388, *3 (N.D. Cal. 2013) ("Third-party borrowers lack standing to assert problems in the assignment of the loan."); *Bateman v. Countrywide Home Loans*, 2012 WL 5593228, *4 (D. Haw. 2012) ("This court has held on numerous occasions that borrowers like Bateman generally lack standing to challenge the assignments of their loans."); *Robertson v. DLJ Mortg. Cap., Inc*., 2012 WL 4840033, *10 (D. Ariz. 2012);  *Williams v. U.S. Bank Nat'l Ass'n*, 2011 WL 2293260, *1 (E.D. Mich. 2011) ("To the extent Plaintiffs challenge any assignment from MERS to U.S. Bank, Plaintiffs lack standing to do so because they were not a party to those assignments."); *Bridge v. Aames Cap. Corp*., 2010 WL 3834059, *3 (N.D. Ohio 2010) ("Courts have routinely found that a debtor may not challenge an assignment between an assignor and assignee."); *see also* 29 Williston on Contracts § 74:50 (4th ed.) (noting that a debtor may not assert that an assignment is voidable because it cannot be assumed that the assignor desires the voiding of the assignment).

1  assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or

2  interests of third parties."); *Grove v. Mead Sch. Dist. No. 354*, 753 F.2d 1528, 1531 (9th Cir. 1985)

3  ("[L]imitations on the exercise of jurisdiction include a general prohibition on a litigant's raising

4  another's rights.").  Any issue about the validity of the transfer of the loan is of concern only to the

5  transferor and transferee.  An invalid transfer did not alter or end Moran's obligation to repay her

6  loan.

7            For the same reason, Moran's allegation that her loan was not transferred to the securitized

8  trust before the trust's closing date fails to state a claim for relief.  She is not a party to or a third

9  party beneficiary of the PSA which governed sale and transfer of her loan to the securitized trust.[3]

10 So she cannot enforce its provisions requiring transfer of assets to the trust before its closing date.

11 Nor does belated transfer somehow absolve her of her debt or her property of its encumbrance.

12 **C.        A Transfer Need Not Be Publicly Recorded**

13          Moran's theory rests on the faulty assumption that the transfer of the beneficial interest in

14 her loan had to be publicly recorded and that since there was no publicly recorded transfer of the

15 beneficial interest in her deed of trust until 2011, her loan could not have been transferred to the

16 securitized trust before its closing date in 2006.  She contends that "where the transfer of a

17 negotiable instrument (Plaintiff's promissory note) to a new buyer for value must be properly

18 indorsed, on the one hand, and the security for the note (the DOT), must be virtually

19 contemporaneously assigned to the new owner by recording with the appropriate county recorder's

20 ────────────────────

21 [3] *See, e.g., Jenkins*, 216 Cal.App.4th at 514-15 ("even if the asserted improper securitization (or other invalid assignments or transfers of the promissory note subsequent to her execution of the note on March 23, 2007) occurred," Jenkins, as an unrelated third party to the transfers, lacked

22 standing to enforce any alleged violation of the PSA); *In re Marks*, 2012 WL 6554705, at *10 (9th Cir. BAP 2012) ("we fail to see how Marks has standing to assert breaches of a trust agreement to

23 which she was not a party or even a third-party beneficiary."); *Graham v. ReconTrust Co., N.A.*, 2012 WL 1035712, at *4 (D. Or. 2012) ("a borrower such as Plaintiff does not have standing to

24 assert a violation of a PSA to which she is not a party."); *Gilmore v. Am. Mortg. Network*, 2012 WL 6193843, at *5 (C.D. Cal. 2012); *McGough v. Wells Fargo Bank, N.A.*, 2012 WL 2277931, at

25 *4 (N.D. Cal. 2012); *Sami v. Wells Fargo Bank*, 2012 WL 967051, at *6 (N.D. Cal. 2012) (finding

26 "that [plaintiff] lacks standing ... because she is neither a party to, nor a third party beneficiary of, that agreement"); *Lindsay v. America's Wholesale Lender*, 2012 WL 83475, at *3 (C.D. Cal.

27 2012); *In re Correia*, 452 B.R. 319, 324 (1st Cir. BAP 2011).

28

office a notarized assignment of the DOT." FAC, 13:28-14:4. This is simply incorrect. There is

no statutory requirements that an assignment of the promissory note or the beneficial interest be

recorded; an assignment is effective even if never recorded. *See Wilson v. Pac. Coast Title Ins.*

*Co.*, 106 Cal.App.2d 599, 602 (1951); *Santens v. Los Angeles Fin. Co.*, 91 Cal.App.2d 197, 201-

02 (1949).

      As previously touched on, this assumption is erroneous:

> Plaintiff rests her argument on the documents in the public record,
> but assignments of debt, as opposed to assignments of the security
> interest incident to the debt, are commonly not recorded. The lender
> could readily have assigned the promissory note to HSBC in an
> unrecorded document that was not disclosed to plaintiff.

*Fontenot*, 198 Cal.App.4th at 272; see also *In re Macklin*, 495 B.R. 8, 26 (Bankr. E.D. Cal. 2013)

("it is not unusual for there not to be an assignment of the deed of trust every time a promissory

note is transferred from buyer to subsequent buyer. Instead, only at the eleventh hour when the

final buyer has to proceed with a nonjudicial foreclosure sale is an assignment of the deed of trust

recorded."); *Quintero Family Trust v. OneWest Bank, F.S.B.*, 2010 WL 392312, at *7 n.6 (S.D.

Cal. 2010) (if the loan were assigned, "the security automatically followed the note[, and

r]ecordation of the assignment was necessary only to give constructive notice to third parties.").

      Moran alleges no facts substantiating her assertion that her loan was transferred to an

investment trust after the trust's closing date. There is no requirement that an assignment of the

beneficial interest in a debt secured by a deed of trust on real property be publicly recorded in

order for the assignee to exercise the power of sale. *See Haynes v. EMC Mortg. Corp.*, 205

Cal.App.4th 329, 336 (2012) (holding that assignment of the promissory note did not need to be

recorded prior to assignee's institution of nonjudicial foreclosure on a deed of trust); *Debrunner v.*

*Deutsche Bank Nat'l Trust Co.*, 204 Cal.App.4th 433, 441 (2012); *Calvo v. HSBC Bank USA,*

*N.A.*, 199 Cal.App.4th 118, 122 (2011); *see also In re Salazar*, 470 B.R. 557, 560-61 (S.D. Cal.

2012); *Permito v. Wells Fargo Bank, N.A.*, 2012 WL 1380322, at *4 (N.D. Cal. 2012); *Yau v.*

*Deutsche Bank Nat'l Trust Co.*, 2011 WL 5402393, at *9 (C.D. Cal. 2011).

      Moran may have in mind California Civil Code § 2932.5, but that applies only to

mortgages, not deeds of trust such as the one securing Moran's loan. *See, e.g., Calvo*, 199

1   Cal.App.4th at 122.  Hence, the fact that there is no public record of a transfer before 2011 proves

2   nothing, permitting no inference that Moran's loan was not transferred earlier, before the trust's

3   closing date.

4          Moran is also wrong in claiming that a transferee of her note must prove an unbroken

5   chain of endorsements in order to be repaid a loan or to foreclose under her deed of trust upon her

6   default.  A deed of trust can be enforced without any need to prove possession of the note or

7   "holder in due course" status.[4]  Moreover, the borrower cannot file an exploratory suit requiring

8   the beneficiary to step forward and prove it has the authority to enforce the note.  *See Herrera*, 205

9   Cal.App.4th at 1505-06; *Debrunner*, 204 Cal.App.4th at 440-42; *Robinson v. Countrywide Home*

10  *Loans, Inc*., 199 Cal.App.4th 42, 46 (2011); *Fontenot*, 198 Cal.App.4th at 269-70; *Gomes v.*

11  *Countrywide Home Loans, Inc.*, 192 Cal.App.4th 1149, 1155 (2011).

12         As explained in *Gomes*, 192 Cal.App.4th at 1155, "nowhere does the [nonjudicial

13  foreclosure] statute provide for a judicial action to determine whether the person initiating the

14  foreclosure process is indeed authorized, and we see no ground for implying such an action."

15  Allowing such suits "would fundamentally undermine the nonjudicial nature of the process and

16  introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures."

17  *Ibid*.  A transferee of a note does not need to prove that a note was validly transferred to it to

18  conduct a non-judicial foreclosure.

19  **D.     The MERS Contentions Have Been Put To Rest**

20         The role of MERS features prominently in the complaint's allegations.  *See* FAC, pp. 16-

21  27.  Such challenges are common in foreclosure delay cases but nevertheless unavailing.

22

23

---

24  [4] The theory that only one who possesses the original promissory note or only a holder in due
    course of the promissory note (as defined by the UCC) may enforce the deed of trust is wholly
25  discredited.  *See, e.g., Lawson v. CitiCorp Trust Bank, FSB*, 2011 WL 3439223, at *5 (E.D. Cal.
    2011) (the "'holder in due course' theory is not cognizable under California law."); *Bennett v. One*
26  *West Bank*, 2011 WL 2493699, at *5 (S.D. Cal. 2011) ("This holder in due course argument has
    been consistently rejected by the courts.  It is well-settled under California law that non-judicial
27  foreclosures can be commenced without producing the original promissory note.").

28

These challenges to MERS' role have been rejected repeatedly.  *See, e.g.*, *Herrera*, 205 Cal.App.4th at 1503; *Fontenot*, 198 Cal.App.4th at 268-73; *Calvo*, 199 Cal.App.4th at 125-26; *Gomes*, 192 Cal.App.4th at 1156.

Moran's objection to MERS acting as the beneficiary is also undone by her own signature on the deed of trust.  That instrument provides:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument."

FAC, Ex. B, p. 3.

Moran cannot double-back now.[5]  She is barred from doing so by contractual consent (CAL. CIV. CODE § 3515; *Edward Brown & Sons v. City & County of San Francisco*, 36 Cal.2d 272, 279 (1950)) and by estoppel (CAL. CIV. CODE § 3517; *Gavina v. Smith*, 25 Cal.2d 501, 505-06 (1944)).

**E.      The "Split" Note And Deed Theory Is Wrong**

Moran's theory that her note and deed of trust were somehow "split" is also wrong.  By operation of law, the beneficial interest in a trust deed automatically follows the note upon transfer.  So note and deed of trust cannot be separated.   *See* 4 Miller & Starr, Cal. Real Estate, § 10:38 (3d ed. 2011); UCC Permanent Editorial Bd., *Report:  Application of the Uniform*

---

[5] *Lane v. Vitek Real Estate Indus. Grp.*, 713 F.Supp.2d 1092, 1099 (E.D. Cal. 2010); *Labra v. Cal-W. Reconveyance Corp.*, 2010 WL 889537, at *8 (N.D. Cal. 2010) ("The deeds of trust explicitly state that MERS is the nominal beneficiary under the deeds of trust, and provide further that MERS has the right to foreclose and sell the property.  In addition, MERS had the right to 'exercise any or all of these interests' and to take any action required of a lender."); *Wurtzberger v. Resmae Mortg. Corp.*, 2010 WL 1779972, at *4 (E.D. Cal. 2010) (rejecting arguments that MERS lacked authority to substitute a trustee under a trust deed because it was not the true economic beneficiary or legal beneficiary given that it was expressly named as beneficiary under the deed of trust.); *Pantoja v. Countrywide Home Loans, Inc.*, 640 F.Supp.2d 1177, 1190 (N.D. Cal. 2009).

*Commercial Code to Selected Issues Relating to Mortgage Notes*, p. 12 (Nov. 14, 2011) ("While this question has provoked some uncertainty and has given rise to some judicial analysis that disregards the impact of Article 9, the UCC is unambiguous:  the sale of a mortgage note … not accompanied by a separate conveyance of the mortgage securing the note does not result in the mortgage being severed from the note.")[6]; UCC cmt. ¶ 9 (UCC § 9203(g) codifies the "common-law rule that a transfer of an obligation secured by a security interest or other lien on personal or real property also transfers the security interest or lien.").[7]  This allegation does not render the note or deed of trust unenforceable.

**F.      Any Reliance On *Glaski* Will Be Misplaced**

It is anticipated that Moran will rely heavily, if not exclusively, on *Glaski v. Bank of Am., Nat'l Ass'n*, 218 Cal.App.4th 1079 (2013) to support the viability of her post-closing date transfer/securitization theory.   "In *Glaski*, the California Court of Appeal held that, under New York trust law, a transfer of a deed of trust in contravention of the trust documents is 'void, not merely voidable,' and, under California law, 'a borrower can challenge an assignment of his or her note and deed of trust if the defect asserted would void the assignment.'"  *Diunugala v. JP Morgan Chase Bank, N.A.*, 2013 WL 5568737, at *8 (S.D. Cal. 2013) (quoting *Glaski*, 218 Cal.App.4th at 461.)).

---

[6]  *Available at* http://www.uniformlaws.org/Shared/Committees_Materials/PEBUCC/PEB_Report_111411.pdf.

[7]  *See also James v. Recontrust Co*., 2011 WL 3841558, at *10-11 (D. Or. 2011) (explaining that "the security interest embodied in the trust deed follows any transfer of the note in favor of the lender and it successors, such that the trust deed does not become split or separated from the note."); *Tapia v. U.S. Bank, N.A*., 718 F.Supp.2d 689, 700-01 (E.D. Va. 2010) (explaining that with each transfer of the promissory note, the right to enforce the deed of trust passed along with the note and rejecting plaintiff's claim that the right enforce the instruments was lost due to the transfer and securitization of the loan); *Merino v. EMC Mortg. Corp.*, 2010 WL 1039842, at *3 (E.D. Va. 2010) (noting that "the so-called 'split' of the deeds of trust from the promissory notes alleged by Plaintiffs does not render the deeds unenforceable nor does it leave the promissory notes unsecured."); *Horvath v. Bank of New York, N.A.*, 2010 WL 538039, at *2 (E.D. Va. 2010) (holding that plaintiff "was not discharged from his obligation under the promissory notes at issue because of his original lenders' sale and assignment of the notes" and that "the 'split' of his promissory notes from the deeds of trust [did] not render the deeds of trust unenforceable."); *Saxon Mortg. Servs., Inc. v. Hillery*, 2009 WL 2435926, at *5 (N.D. Cal. 2009).

The *Glaski* opinion is not binding on this Court, of course, and nearly every court to consider *Glaski*'s reasoning has rejected it.[8]  *Glaski* conflicts with better reasoned opinions on the issue of a borrower's standing to sue over alleged defects in the transfer or assignment of the borrower's loan.[9]

Wariness toward the *Glaski* opinion is well-warranted.  For starters, *Glaski* did not acknowledge the holdings or reasoning of other cases such as *Jenkins*, discussed above, or cases such as *Siliga v. Mortg. Elec. Registration Systems, Inc.*, 219 Cal.App.4th 75, 85 (2013), explaining that "Absent any prejudice, the Siligas have no standing to complain about any alleged lack of authority or defective assignment."

And the reasoning of *Glaski* is simply not persuasive.  To begin with, the assignment of mortgage notes is governed by the Uniform Commercial Code, not New York trust law.  *See, e.g., In re Tovar*, 2012 WL 3205252, *5 (9th Cir. BAP); *Jones v. Deutsche Bank Nat'l Trust Co.*, 2013 WL 3455716, *8 n.7 (N.D. Tex. 2013) (the UCC governs "the negotiation, transfer, and

---

[8] *See, e.g., Davies v. Deutsche Bank Nat'l Trust Co.*, — Fed.Appx. —, 2014 WL 1152800, at *2 (9th Cir. BAP) ("We believe the California Supreme Court, if confronted with this issue, would [hold that debtors—who are not parties to the pooling and servicing agreements—cannot challenge them]."); *Flores v. EMC Mortg. Co.*, — F.Supp.2d —, 2014 WL 641097, at *6 (E.D. Cal. 2014); *Gieseke v. Bank of Am., N.A.*, 2014 WL 718463, at *3-4 (N.D. Cal. 2014); *Snell v. Deutsche Bank Nat'l Trust Co.*, 2014 WL 325147, at *4-5 (E.D. Cal. 2014); *Covarrubias v. Fed. Home Loan Mortg. Corp.*, 2014 WL 311060, at *4-5 (S.D. Cal. 2014); *Apostol v. CitiMortgage, Inc.*, 2013 WL 6328256, at *7 (N.D. Cal. 2013) ("courts in this District have expressly rejected *Glaski* and adhered to the majority view that individuals who are not parties to a PSA cannot base wrongful foreclosure claims on alleged deficiencies in the PSA/securitization process."); *Rivac v. Ndex West LLC*, 2013 WL 6662762, at *4 (N.D. Cal. 2013) ("This court is persuaded by the 'majority position' of courts within this district, which is that *Glaski* is unpersuasive, and that 'plaintiffs lack standing to challenge noncompliance with a PSA in securitization unless they are parties to the PSA or third party beneficiaries of the PSA.'"); *Newman v. Bank of New York Mellon*, 2013 WL 5603316, at *3 n.2 (E.D. Cal. 2013); *Pugh v. JPMorgan Chase Bank, N.A.*, 2013 WL 5739147, at *2 n.5 (E.D. Cal. 2013) ("*Glaski* is not persuasive."); *Subramani v. Wells Fargo Bank N.A.*, 2013 WL 5913789, at *3 (N.D. Cal. 2013); *Diunugala v. JP Morgan Chase Bank, N.A.*, 2013 WL 5568737, at *8 (S.D. Cal. 2013); *Boza v. U.S. Bank Nat'l Ass'n*, 2013 WL 5943160, at *6-7 (C.D. Cal. 2013); *Bui v. OneWest Bank FSB*, 2014 WL 507385, at *2 (Bankr. N.D. Cal. 2014); *Sandri v. Capital One, N.A.*, 2013 WL 5925655 (Bankr. N.D. Cal. 2013).

[9] *See, e.g., Jenkins*, 216 Cal.App.4th at 512-15; *Siliga*, 219 Cal.App.4th at 85 ("Absent any prejudice, the Siligas have no standing to complain about any alleged lack of authority or defective assignment."); *Arabia v. BAC Home Loans Serv., L.P.*, 208 Cal.App.4th 462, 473-74 (2012).

1     endorsement" of the note); *In re Parker*, 2010 WL 3927732, at *3 (Bankr. D. Vt. 2010)

2     (enforceability of a mortgage note held in a securitization trust is governed by UCC, "specifically

3     Article 3 dealing with negotiable instruments.").  The Uniform Commercial Code does not void

4     transfers made to a trust after its closing date.

5          Even if New York's Estates, Powers & Trust Law ("EPTL") applied, *Glaski* incorrectly

6     interpreted it to conclude that a post-closing date transfer is void rather than voidable.  The EPTL

7     voids only "every sale, conveyance or other act *of the trustee* in contravention of the trust …"

8     N.Y. Est. Powers & Trusts Law § 7-2.4 (emphasis supplied).  The act of transferring mortgage

9     notes to a trust is not an "act of the trustee;" it is an act of the transferor.  There is thus no statutory

10    basis to deem void the assignment of a mortgage in breach of the terms of the PSA.  *See Deutsche*

11    *Bank Nat'l Trust Co. v. Stefiej*, 2013 WL 1103903, *3-4 (N.D. Ill. 2013) (concluding that transfer

12    of note in breach of PSA was not void under EPTL § 7-2.4 because the failure to comply with the

13    terms of the PSA was the fault of the assignor, not the trustee, and thus "defendants have not

14    pointed to an act 'of the trustee' in contravention of the PSA's terms.").  Indeed, the *Glaski*

15    opinion wholly ignored a long line of New York cases that interpret EPTL § 7-2.4 to mean that

16    acts in violation of the trust instrument are voidable rather than void.  *See Bank of Am., Nat'l*

17    *Ass'n, v. Bassman FBT, L.L.C.*, 981 N.E.2d 1, 8-9 (Ill. App. Ct. 2012) (collecting New York

18    appellate cases applying EPTL § 7-2.4 and following cases that treat ultra vires acts as voidable

19    rather than void).

20         *Glaski* also contradicts the basic principle that someone who is not a party to a contract

21    (such as a PSA) has no standing to enforce it unless they are an intended third-party beneficiary.

22    *See, e.g., Murphy v. Allstate Ins. Co.*, 17 Cal.3d 937, 944 (1976) ("A third party should not be

23    permitted to enforce covenants made not for his benefit, but rather for others .…  As to any

24    provision made not for his benefit but for the benefit of the contracting parties or for other third

25    parties, he becomes an intermeddler."); *Rodriguez v. Oto*, 212 Cal.App.4th 1020, 1028 (2013); *see*

26    *also Jenkins*, 216 Cal.App.4th 497, 515; *see also Tran v. Bank of New York*, 2014 WL 1225575, at

27    *3 (S.D.N.Y. 2014) ("New York courts interpreting the EPTL consistently hold that litigants who

28

1    are not beneficiaries of a trust lack standing to enforce the trust's terms or to challenge the actions

2    of the trustee.").

3        *Glaski* ignores the principle that "a plaintiff in a suit for wrongful foreclosure has generally

4    been required to demonstrate [that] the alleged imperfection in the foreclosure process was

5    prejudicial to the plaintiff's interests." *Fontenot*, 198 Cal.App.4th at 272; *see also Jenkins*, 216

6    Cal.App.4th at 515.

7        And while the *Glaski* opinion did attempt to distinguish *Gomes v. Countrywide Home*

8    *Loans, Inc.*, 192 Cal.App.4th 1149, 1155 (2011), it was again less than persuasive in doing so.

9    *Glaski* distinguishes *Gomes* on its facts while ignoring the broader principle for which it and later

10   similar cases stand; namely, that California law does not allow "trustor-debtors to pursue

11   preemptive judicial actions to challenge the right, power, and authority of a foreclosing

12   'beneficiary' or beneficiary's 'agent' to initiate and pursue foreclosure."[10] *See Glaski*, 218

13   Cal.App.4th at 1099.

14       California non-judicial foreclosure law does not require a foreclosing party to prove that it

15   holds the note or to establish a chain of ownership of the note. *See, e.g., Jenkins*, 216 Cal.App.4th

16   497, 512; *Dennis v. Wachovia Bank, FSB*, 2011 WL 181373, at *7-8 (N.D. Cal. 2011). This is

17   because requiring a foreclosing party to establish its interest in the note "would fundamentally

18   undermine the nonjudicial nature of the process" and transform the non-judicial foreclosure

19   process into a judicial foreclosure proceeding. *Gomes*, 192 Cal.App.4th at 1155. "[N]owhere

20   does the [nonjudicial foreclosure] statute provide for a judicial action to determine whether the

21   person initiating the foreclosure process is indeed authorized, and we see no ground for implying

22   such an action." *Id.*; *see also Shuster*, 211 Cal.App.4th at 511 (California laws does not allow

23   "trustor-debtors to pursue preemptive judicial actions to challenge the right, power, and authority

24   of a foreclosing 'beneficiary' or beneficiary's 'agent' to initiate and pursue foreclosure).

25

26   _____

27   [10] *Shuster*, 211 Cal.App.4th at 511; *see also Herrera*, 205 Cal.App.4th at 1505-06; *Debrunner*, 204 Cal.App.4th at 440-42; *Fontenot*, 198 Cal.App.4th at 269-70.

28

                                                    Motion to Dismiss First Amended Complaint

*Glaski* misapplied New York trust law, misinterpreted it to mean that post-closing date transfers render an assignment void, contradicted basic contract principle that a third party lacks standing to enforce a contract, ignored the well-established principle that a borrower may not challenge a foreclosure without showing some prejudice due to the allege procedural irregularity, and goes against a host of cases such as *Jenkins*, *Siliga*, and *Gomes*.  It should not be followed.

## IV.  MORAN'S SECURITIZATION THEORY DOES NOT SUPPORT HER WRONGFUL FORECLOSURE CLAIM

Moran's first cause of action is for wrongful foreclosure.  It is not viable because it is premised on the faulty post-closing date transfer theory just discussed.  Moran's claim fails for other independent reasons as well, such as a lack of tender and prejudice.

A plaintiff lacks standing to challenge a foreclosure sale unless he or she first tenders the undisputed obligation in full.  Tender of the amount owed is a condition precedent to any claim of wrongful foreclosure or challenging the regularity or the validity of a foreclosure sale.  *See Abdallah v. United Sav. Bank*, 43 Cal.App.4th 1101, 1109 (1996) (explaining that the tender rule applies to "any cause of action for irregularity in the sale procedure"); *United States Cold Storage v. Great W. Sav. & Loan Ass'n*, 165 Cal.App.3d 1214, 1225 (1985); *Arnolds Mgmt. Corp. v. Eischen*, 158 Cal.App.3d 575, 578-79 (1984).  The tender rule is strictly applied.  *See Nguyen v. Calhoun*, 105 Cal.App.4th 428, 439 (2003).

As explained by a respected treatise,

> A challenge to the validity of the trustee's sale is an attempt to have the sale set aside and to have the title restored.  The action is in equity, and a trustor seeking to set the sale aside is required to do equity before the court will exercise its equitable powers.  Therefore, as a condition precedent to an action by the trustor to set aside the trustee's sale … the trustor must pay, or offer to pay, the secured debt ….  Without an allegation of such a tender in the complaint that attacks the validity of the sale, the complaint does not state a cause of action.[11]

"A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust."  *Karlsen v. Am. Sav. & Loan Ass'n*, 15 Cal.App.3d

---

[11] 4 Miller & Starr, Cal. Real Estate § 10:212, pp. 686-87 (3d ed. 2003) (fns. omitted).

112, 117 (1971) (citations omitted).  "[A]n action to set aside the sale, unaccompanied by an offer to redeem, would *not* state cause of action which a court of equity would recognize."  *Leonard v. Bank of Am. etc. Ass'n*, 16 Cal.App.2d 341, 344 (1936) (emphasis in original) (citing *Copsey v. Sacramento Bank*, 133 Cal. 659, 662 (1901)).  The rationale behind the tender offer rule is that if the plaintiff could not have redeemed the property had the sale procedures been proper, then any irregularities did no harm to the plaintiff.  *See FPCI RE-HAB 01 v. E&G Invs., Ltd*., 207 Cal.App.3d 1018, 1022 (1989); *see also United States Cold Storage*, 165 Cal.App.3d at 1224 ("It would be futile to set aside a foreclosure sale on the technical ground that notice was improper, if the party making the challenge did not first make full tender and thereby establish his ability to purchase the property.").

Moran has not alleged that she is either willing or able to tender the money owed.  *Cf. Nguyen*, 105 Cal.App.4th at 439 ("it is a debtor's responsibility to make an unambiguous tender of the entire amount due or else suffer the consequence that the tender is of no effect.") (citation omitted).  Indeed, she contends she need not pay back her loan at all.  *See* FAC, 45:7-12.  She therefore lacks standing to challenge the foreclosure proceedings.  This action may be dismissed in its entirety on this basis.

Moran also cannot challenge a foreclosure absent some prejudice.  To challenge a nonjudicial foreclosure, it is not enough to merely show some sort of irregularity in the process.  A plaintiff must also establish that the irregularity resulted in some sort of prejudice.  *See, e.g.*, *Fontenot*, 198 Cal.App.4th at 272 ("a plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests"); *Knapp v. Doherty*, 123 Cal.App.4th 76, 86 n.4 (2004).  As noted previously, there was no prejudice to Moran, even assuming there was any merit to the contention that her loan was transferred to a securitized trust after the trust's closing date.

## V.  MORAN CANNOT QUIET TITLE WITHOUT REPAYING WHAT SHE BORROWED

In her second cause of action, Moran declares that "Defendants have no legal or equitable right, claim, or interest in the property" she used to secure her loan and she "therefore seeks a declaration that the title to the Subject Property is vested in [her] alone … [and] that the

1  Defendants herein and persons known and unknown … be declared to have no estate, right, title,

2  lien or interest in the Subject Property …."  FAC, 44:25-45:5.

3      Moran cannot quiet and clear title to the property without alleging that she paid the debt it

4  secures.  *See, e.g., Stebley v. Litton Loan Servicing, LLP*, 202 Cal. App.4th 522, 526 (2011);

5  *Miller v. Provost*, 26 Cal.App.4th 1703, 1707 (1994) ("a mortgagor of real property cannot,

6  without paying his debt, quiet his title against the mortgagee.").

7      She borrowed a million dollars and promised to repay it.  *See* FAC, Ex. A.  When she ran

8  into financial difficulty, GMAC offered her a loan modification which she accepted and renewed

9  her promise to repay.  *See* FAC, Ex. C.  She intended to secure her promise to repay the loan with

10  a deed of trust encumbering the property.  It would be inequitable to quiet title in Moran's name

11  without requiring her to repay the loan she obtained to buy or refinance the property.  *See Stebley*,

12  202 Cal.App.4th at 526 ("Allowing plaintiffs to recoup the property without full tender would give

13  them an inequitable windfall, allowing them to evade their lawful debt.").

14      This cause of action should be dismissed.

15  **VI.   THE SLANDER OF TITLE CLAIM FAILS BECAUSE RECORDING**
    **FORECLOSURE DOCUMENTS IS PRIVILEGED**

16

17      In Moran's third cause of action, she avers that "The recording of the foregoing

18  Assignment of DOT, SOT, NOD and NOTS have cast a cloud on the title to [her] Property as she

19  alleges that Defendants and their agents have no power to enforce her mortgage."  FAC, 46:15-17.

20      No cause of action will lie based on this allegation.  In addition to being premised on the

21  faulty post-closing transfer theory, recording foreclosure documents is a privileged act on which

22  no tort claim of any sort, other than malicious prosecution, may be based.  *See, e.g., Preciado v.*

23  *Wells Fargo Home Mortg*., 2013 WL 1899929, at *7 (N.D. Cal. 2013); *Madlaing v. JPMorgan*

24  *Chase Bank, N.A*., 2013 WL 2403379, at *13-14 (E.D. Cal. 2013); *Marty v. Wells Fargo Bank*,

25  2011 WL 1103405, at *7 (E.D. Cal. 2011) ("Notices such as those filed by defendants in this case

26  pursuant to a non-judicial foreclosure action constitute privileged communications.").

27      California Civil Code § 2924(d)(1) provides that "[t]he mailing, publication, and delivery

28  of notices as required by this section" "constitute privileged communications pursuant to Section

47." Foreclosure notices are required by § 2924(a)(1) and (3); hence, giving these notices are privileged conduct under Civil Code § 47. Civil Code § 47's privilege "bars all tort causes of action except malicious prosecution." *Jacob B. v. County of Shasta*, 40 Cal.4th 948, 960 (2007). The privilege is "absolute." It cannot be defeated by alleging malice or other wrongful intent or acts. *Flatley v. Mauro*, 39 Cal.4th 299, 322 (2006); *Silberg v. Anderson*, 50 Cal.3d 205, 215-16 (1990).

In addition to a false and unprivileged publication, a viable slander of title claim requires direct and immediate pecuniary loss to the plaintiffs caused by the publication. *Manhattan Loft, LLC v. Mercury Liquors, Inc*., 173 Cal.App.4th 1040, 1051 (2009). There are no plausible allegations of this.

This claim fails as a matter of law.

## VII.   THE FRAUD CLAIM LACKS REQUIRED ELEMENTS AND IS NOT PLEADED WITH PARTICULARITY

Moran's fourth cause of action is for fraud. She contends that defendants committed fraud by recording an assignment of deed of trust, a substitution of trustee, a notice of default, and a notice of trustee's sale. *See* FAC, pp. 48-51. She also contends that the assignment of deed of trust and the notice of default contain false statements. *See id*., pp. 48-50.

As touched upon in the prior section, the recording of foreclosure notices is a privileged act that will not support any tort claim.

Moran also does not allege that any misrepresentation was made to her. Neither the documents themselves, nor the "statements" in the assignment or notice of default were representations made specifically to Moran. "[T]he plaintiff is the person to whom the misrepresentation must have been made, and it is the plaintiff who must have relied on the misrepresentation to his damage." *Pulver v. Avco Fin. Servs*., 182 Cal.App.3d 622, 640 (1986). These foreclosure documents were filed with the Santa Clara County Recorder's Office, not representations to Moran in particular. As a result, she has no fraud action based on them.

Nor does Moran plead facts constituting other necessary elements for a fraud claim. She does not specify any manner in which she relied on these documents or the supposedly inaccurate

statements in the assignment of deed of trust or the notice of default.  "[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and specifically, all the elements of the cause of action," including that the defendant "intended to induce the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment."  *Conrad v. Bank of Am.*, 45 Cal.App.4th 133, 156-57 (1996).  The filing of these documents with the Santa Clara County Recorder's office were not statements that induced Moran to do anything; they were statutorily required notices filed to satisfy California non-judicial foreclosure requirements.

She does not plead facts showing how she was harmed by the recording of these documents.  Damage to a plaintiff—a real out-of-pocket dollar loss—is an essential element of a well-pleaded fraud claim.  CAL. CIV. CODE § 1709; *Fladeboe v. Am. Isuzu Motors, Inc.*, 150 Cal.App.4th 42, 66 (2007); *Roberts v. Ball, Hunt, Hart, Brown & Baerwitz*, 57 Cal.App.3d 104, 111 (1976).  Deception without damage is not actionable fraud.  *Stephenson v. Argonaut Ins. Co.*, 125 Cal.App.4th 962, 974-75 (2004); *Building Permit Consultants, Inc. v. Mazur*, 122 Cal.App.4th 1400, 1415 (2004).

Nothing in the FAC suggests that Moran is out of pocket so much as a dollar, net.  Instead, it is evident that Moran is still indebted.  She does not allege that she has repaid more than she has borrowed—$1,000,000—her only road to a net dollar loss.

Moreover, this fraud claim must be, but is not, pleaded with particularity.  *See Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).  Under Rule 9(b), "[i]n alleging fraud …, a party must state with particularity the circumstances constituting fraud …."  To meet this standard, the complaint must allege "particular facts going to the circumstances of the fraud, including time, place, persons, statements made and an explanation of how or why such statements are false or misleading."  *Morris v. BMW of N. Am., LLC*, 2007 WL 3342612, at *3 (N.D. Cal. 2007) (citing *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 n.7 (9th Cir. 1994) (en banc)); *see also Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (noting that under Rule 9(b) "the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.").

1    The FAC offers no specific statement made by any of the defendants, who made it, when it

2    was made, where it was made, or how or why it was misleading.  The lack of particularity in

3    pleading is especially evident since Moran is bringing suit against multiple defendants, but she

4    does not specify what in particular what any individual defendant is alleged to have done.

5    > … Rule 9(b) does not allow a complaint to merely lump multiple
>    defendants together but "require[s] plaintiffs to differentiate their
6    > allegations when suing more than one defendant ... and inform each
>    defendant separately of the allegations surrounding his alleged par-
7    > ticipation in the fraud."  In the context of a fraud suit involving
>    multiple defendants, a plaintiff must, at a minimum, "identif[y] the
8    > role of [each] defendant[ ] in the alleged fraudulent scheme."

9    *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (citation omitted; citation and

10   quotation omitted in original, alterations original).

11   Like Swartz's complaint, Moran's FAC "is shot through with general allegations that the

12   'defendants' engaged in fraudulent conduct."  *Id.* at 765.  The Ninth Circuit held that kind of

13   pleading insufficient in *Swartz*; it is equally inadequate here.

14   **VIII.   MORAN MAY NOT CANCEL HER LOAN AND KEEP ITS PROCEEDS**

15   In Moran's fifth cause of action, she seeks a Court order declaring that her promissory

16   note, the deed of trust, the loan modification agreement, the substitution of trustee, the notice of

17   default, and the notice of trustee's sale are "without force and effect" and she further seeks "the

18   clerk of the Court to sign a Deed of Reconveyance so that the fatal cloud on [her] property may be

19   removed."  FAC, 53:16-24.

20   Moran cannot cancel her loan or the deed of trust which secured it.  Besides having no

21   legal basis for "cancelling" these instruments, a party seeking rescission of a contract must

22   "[r]estore to the other party everything of value which he has received from him under the contract

23   or offer to restore the same …."  CAL. CIV. CODE § 1691(b); *see also* § 1692.  Moran has not done

24   this or expressed any willingness or ability to restore the loan proceeds.

25   Simply put, Moran cannot acquire free and clear title to the property without paying or

26   tendering what they borrowed against the property.  *See Bartold v. Glendale Fed. Bank*, 81

27   Cal.App.4th 816, 821 (2000).  She wants a windfall:  the property free of liens without any

28

1   obligation to repay the loan.  The law does not countenance such an inequitable claim.  It should

2   not be entertained by this Court.

3         She also waited too long to seek cancellation of her loan and the trust deed.  "An action

4   based upon the rescission of a contract in writing" must be commenced within four years "from

5   the date upon which the facts that entitle the aggrieved party to rescind occurred."  CAL. CODE

6   CIV. PROC. § 337(3); *Miller v. Bechtel Corp.*, 33 Cal.3d 868, 873-74 (1983).   The promissory note

7   and deed of trust are dated September 13, 2006.  *See* FAC, Exs. A, B.

8         **IX.   CIVIL CODE SECTION 2924.17 DID NOT TAKE EFFECT UNTIL 2013**

9         In her sixth cause of action, Moran avers that defendants violated California Civil Code

10  § 2924.17, a provision of the Homeowners Bill of Rights ("HBOR"), by recording an inaccurate

11  assignment of deed of trust, substitution of trustee, notice of default, and notice of trustee's sale.

12  *See* FAC, 55:2-7.

13        The assignment of deed of trust was recorded on April 26, 2011.  *See* FAC, Ex. D.  The

14  substitution of trustee was recorded on April 25, 2012.  *See id.*, Ex. E.  The notice of default was

15  recorded on April 25, 2012.  *See id.*, Ex. F.  The notice of trustee's sale was recorded on July 31,

16  2012.  *See id.*, Ex. G.

17        The HBOR, including § 2924.17, went into effect on January 1, 2013.  *Sepehry-Fard v.*

18  *Aurora Bank FSB*, 2013 WL 2239820, at *3 (N.D. Cal. 2013); *Michael J. Weber Living Trust v.*

19  *Wells Fargo Bank, N.A.*, 2013 WL 1196959, at *4 (N.D. Cal. 2013).  Like most legislation, the

20  HBOR applies only prospectively.  *See, e.g., Rose v. J.P. Morgan Chase, N.A.*, 2014 WL 546584,

21  at *8 (E.D. Cal. 2014); *Michael J. Weber Living Trust*, 2013 WL 1196959, at *4; *McGough v.*

22  *Wells Fargo Bank, N.A.*, 2012 WL 5199411, *5, n.4 (N.D. Cal. 2012); *see generally Myers v.*

23  *Philip Morris Cos.*, 28 Cal.4th 828, 841 (2002); *Bank of America, N.A. v. Roberts*,

24  217 Cal.App.4th 1386, 1394 (2013).  Because the alleged conduct happened before January 1,

25  2013, it is not actionable under the Act.

26        **X.   THERE IS NO CAUSATION OR INJURY FOR A § 17200 ACTION**

27        Moran's seventh cause of action asserts that defendants have violated California Business

28  and Professions Code § 17200.  *See* FAC, pp. 55-57.  This is turn based on a hodge-podge of

1   cursory allegations: that defendants fabricated the assignment of deed of trust; issued foreclosure

2   documents without the authority to do so; failed to disclose the principal for which documents

3   were being executed in violation of California Civil Code § 1095; acting as the lender, beneficiary,

4   and trustee without authority to do so; failing to comply with California Civil Code § 1708 and

5   1709; violation provisions of the non-judicial foreclosure statute; and committing a felony under

6   California Penal Code §§ 115 and 532(f)(a).  *See id.*, 56:2-17.

7          To state a § 17200 claim, Moran must allege facts showing she suffered an economic

8   injury *caused by* defendants' allegedly unlawful, unfair or fraudulent conduct.  *See Kwikset Corp.*

9   *v. Superior Court*, 51 Cal.4th 310, 326-27 (2011).  "A plaintiff fails to satisfy the causation prong

10  of the statute if he or she would have suffered 'the same harm whether or not a defendant

11  complied with the law.' "  *Jenkins*, 216 Cal.App.4th 497, 522 (quotation omitted).

12         Moran's claimed injuries—"imminent loss of her home, severe emotional distress,

13  damages to her creditworthiness, inability to modify the terms of her loan"—were not caused by,

14  indeed are not even connected to, the alleged "botched" securitization of her loan.  There is no

15  causal connection between the alleged wrongdoing and the harm suffered.  *See Jenkins*, 216

16  Cal.App.4th at 522.

17         Moreover, because this § 17200 claim is predicated on supposed fraud, it is required to be

18  pleaded with particularity, which it is not.

19  **XI.  THE LACK OF A COGNIZABLE DUTY UNDERCUTS ANY NEGLIGENCE CLAIM**

20         In her eighth cause of action, Moran contends that "GMAC has breached its duty of care

21  and were [sic] negligent because GMAC demanded mortgage payments from Plaintiff when

22  GMAC does not have the right to enforce that obligation."  FAC, 58:12-13.

23         The claim fails for want of a cognizable duty.  "An action in negligence requires a showing

24  that the defendant owed the plaintiff a legal duty, that the defendant breached the duty, and that

25  the breach was a proximate or legal cause of injuries suffered by the plaintiff."  *Ann M. v. Pac.*

26  *Plaza Shopping Ctr.*, 6 Cal.4th 666, 673 (1993) ("The existence of a duty of care toward an

27  interest of another worthy of legal protection is the essential prerequisite to a negligence cause of

28  action, determined as a matter of law by the court.") (citation omitted); *Software Design &*

*Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal.App.4th 472, 478 (1996) ("The existence of a duty of care toward an interest of another worthy of legal protection is the essential prerequisite to a negligence cause of action, determined as a matter of law by the court." ).

Moran states that "In offering Plaintiff the possibility of a loan modification or not, GMAC and U.S. Bank have gone beyond the traditional role of lender and loan servicer."  FAC, 57:27-58:1.  Not so.  "[A] loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money."  *Lueras v. BAC Home Loans Serv., LP*, 221 Cal.App.4th 49, 67 (2013); *see also Robinson v. Bank of Am., N.A.*, 2014 WL 60969, at *4-5 (N.D. Cal. 2014); *Sanguinetti v. Citi Mortg., Inc.*, 2013 WL 4838765, at *4-6 (N.D. Cal. 2013).  Engaging in the loan modification process is a traditional money lending activity giving rise to no duty of care.  *See Meyer v. Wells Fargo Bank, N.A.*, 2013 WL 6407516, at *5 (N.D. Cal. 2013).

Any negligence claim is also precluded by the economic loss doctrine.  "[P]laintiffs may recover in tort for physical injury to person or property, but not for purely economic losses that may be recovered in a contract action."  *San Francisco Unified Sch. Dist. v. W.R. Grace & Co.*, 37 Cal.App.4th 1318, 1327 (1995); *see also Seely v. White Motor Co.*, 63 Cal.2d 9, 18-19 (1965).  Moran has alleged no injury to her person or property.  Economic losses alone will not support this tort action.

## XII.   UNJUST ENRICHMENT IS NOT A RECOGNIZED CAUSE OF ACTION

Moran's ninth and final cause of action is for "unjust enrichment."  She avers that GMAC unjustly enriched itself by collecting her monthly mortgage payments without the right to do so.  *See* FAC, 60:2-6.

"Unjust enrichment" is not a cause of action under California law.  *See Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 1370 (2010); *McBride v. Boughton*, 123 Cal.App.4th 379, 387 (2004).[12]  It is a general principle, underlying various legal doctrines and remedies, rather than a

---

[12] *See also Mobine v. OneWest Bank, FSB*, 2012 WL 243351, at *7 (S.D. Cal. 2012) ("California does not recognize a *cause of action* for unjust enrichment."); *Low v. LinkedIn Corp.*, 900 (footnote continued)

1  remedy itself.  *See Melchior v. New Line Prods., Inc.*, 106 Cal.App.4th 779, 793 (2003); *see also*

2  *Jogani v. Super. Ct.*, 165 Cal.App.4th 901, 911 (2008).

3      Just as importantly, there are no facts supporting any assertion that defendants were

4  enriched at all or that if they were, it was in any unjust.  Moran signed a promissory note and deed

5  of trust.  *See FAC, Exs. A, B.*  She borrowed $1,000,000 and promised to pay it back.  *See id.*  In

6  the event she did not do so, she agreed that her house could be sold to help recoup the loss.

7  Because Moore took $1,000,000 and did not repay, defendants have not been unjustly enriched by

8  either collecting the payments she agreed to make or by foreclosing after those payments stopped.

9  **XIII.   MORAN'S LAWSUIT ALSO FAILS BECAUSE SHE DID NOT GIVE
         PRESUIT NOTICE AND OPPORTUNITY TO CURE**

10

11      In addition to not stating a claim for relief, Moran is prohibited from bringing this lawsuit

12  because she failed to comply with the presuit notice and opportunity to cure provision in the deed

13  of trust.  Section 20 of that instrument requires that any party seeking to bring a judicial action

14  alleging breach of its requirements first give notice to the other party of the alleged breach and

15  afford a reasonable period for taking corrective action.  *See* FAC, Ex. B.

16      Section 20 provides that

17          Neither Borrower nor Lender may commence, join, or be joined to
            any judicial action (as either an individual litigant or the member of
18          a class) that arises from the other party's actions pursuant to this
            Security Instrument or that alleges that the other party has breached
19          any provision of, or any duty owed by reason of, this Security
            Instrument, until such Borrower or Lender has notified the other
20          party (with such notice given in compliance with the requirements
            of Section 15) of such alleged breach and afforded the other party
21          hereto a reasonable period after the giving of such notice to take
            corrective action.
22

23  *Id.*

24      The right to payments of the loan, transfers in interest in the loan and the initiation of

25  nonjudicial foreclosure proceedings (the issues Moran is challenging in this case) are all part of

26  the trust deed.  Because Moran did not give written, presuit notice and an opportunity for

27  _____

F.Supp.2d 1010, 1031 (N.D. Cal. 2012).

28

1   defendants to cure the alleged non-compliance with the trust deed, Moran may not pursue this

2   judicial action.  *See, e.g.*, *Hollowell v. Alliance Bancorp, Inc.*, 2011 WL 2884801, at *1 (N.D. Cal.

3   2011); *Niyaz v. Bank of Am.*, 2011 WL 63655, at *2 (E.D. Va. 2011) (dismissing claims because

4   borrower failed to provide presuit notice and an opportunity for the lender to cure as required by

5   the terms of the deed of trust); *Johnson v. Countrywide Home Loans, Inc.*, 2010 WL 5138392, at

6   *2 (E.D. Va. 2010) (same); *Gerber v. First Horizon Home Loan Corp.*, 2006 WL 581082, at *2

7   (W.D. Wash. 2006) (same).

8                                        **XIV.  CONCLUSION**

9           For the reasons stated above, Moran's FAC against defendants fails to state any viable

10  claim for relief.  Hence, the FAC should be dismissed.  It should also be dismissed without further

11  leave to amend.  The substance of the FAC is almost a verbatim copy of the original complaint.  It

12  is clear that Moran cannot state any claim based on her post-closing date transfer theory.

13          If any portion of the FAC is not dismissed in its entirety, Moran should be directed to file

14  any second amended complaint within twenty days of the Court's Order.

15

16  DATED:  April 28, 2014                        SEVERSON & WERSON
                                                   A Professional Corporation
17

18

19                                                 By:  _____/s/___*Jon D. Ives*_____
                                                                   Jon D. Ives
20

21                                                 Attorneys for Defendants
                                                   OCWEN LOAN SERVICING, LLC; GMAC
22                                                 MORTGAGE, LLC; EXECUTIVE TRUSTEE
                                                   SERVICES, LLC DBA ETS SERVICES, LLC; US
23                                                 BANK NATIONAL ASSOCIATION AS TRUSTEE
                                                   FOR THE GREENPOINT MORTGAGE FUNDING
24                                                 TRUST, MORTGAGE PASS-THROUGH
                                                   CERTIFICATES, SERIES 2006-AR7; AND
25                                                 MORTGAGE ELECTRONIC REGISTRATION
                                                   SYSTEMS, INC.
26

27

28