UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PATRICIA C. MORAN, ) | Case No.: 5:13-CV-04981-LHK |
| ) | |
| Plaintiff, ) | |
| v. ) | CORRECTED ORDER GRANTING |
| ) | DEFENDANTS' MOTION TO DISMISS |
| GMAC MORTGAGE, LLC, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff Patricia Moran ("Moran") brings this mortgage action against GMAC Mortgage, LLC, Executive Trustee Services, LLC, Mortgage Electronic Registration Systems, Inc., US Bank National Association as Trustee for the Greenpoint Mortgage Funding Trust, and OCWEN Loan Servicing, LLC (collectively, "Defendants"). Defendants now move to dismiss the First Amended Complaint. Having considered the briefing, the record in this case, and applicable law, the Court GRANTS Defendants' Motion to Dismiss.[1]

**I.   BACKGROUND**

   **A.   Factual Background**

Except where otherwise noted, the Court draws the following facts, taken as true for purposes of a motion to dismiss, from Plaintiff's First Amended Complaint. ECF No. 29 ("FAC").

---

[1] The original motion to dismiss order was issued on June 18, 2014. This corrected order incorporates no substantive changes and merely corrects some citation errors.

1
Case No.: 13-CV-04981-LHK
CORRECTED ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

On September 13, 2006, Plaintiff entered into a residential mortgage loan with Greenpoint Mortgage Funding, Inc. ("Greenpoint Mortgage"), a subsidiary of Capital One Financial Group, to finance the purchase of property at 10920 Ridgeview Avenue, San Jose, CA 95127. FAC at 2, 13. The Note and Deed of Trust secured the property, and the deed was recorded in the Santa Clara County Recorder's office later that year.[2] FAC at 13, Ex. A. Defendant Mortgage Electronic Registration Systems, Inc. ("MERS"), which holds title to mortgages and tracks ownership interests and servicing rights in mortgages, acted as the nominal beneficiary of Greenpoint Mortgage as stated in the deed of trust signed by the Plaintiff. FAC at 3.

According to the FAC, sometime on or before November 1, 2006, Greenpoint Mortgage sold Plaintiff's loan to Lehman Brothers Holdings, Inc. FAC at 13-14. Lehman Brothers then sold the loan to a securitization depositor, Defendant Structured Asset Securities Corporation ("SASC"). *Id.* SASC then sold and securitized the Plaintiff's mortgage loan into a mortgage-backed security ("MBS") trust organized under New York law called Greenpoint Mortgage Funding Trust 2006-AR7. FAC at 5, 16. Defendant US Bank National Association (US Bank) was named as the trustee. FAC at 5. Plaintiff alleges Defendant GMAC Mortgage LLC (GMAC) represented itself as the "purported servicer, successor lender, mortgagee and secured creditor" in Plaintiff's loan. FAC at 3. Plaintiff claims however that GMAC was actually a "complete stranger," as it was never a party to the original loan transaction and was never a successor lender. *Id.* Executive Trustee Services, LLC (ETS Services) was an affiliate company of GMAC and the substitute trustee in Plaintiff's deed of trust. FAC at 4. ETS was later sold to Defendant Ocwen Loan Services, LLC. *Id.*

Allegedly, none of these transactions were initially recorded in the Santa Clara County Clerk-Recorder's office at the time of the transaction. FAC at 14-16. Plaintiff also alleges that the transfer of Plaintiff's mortgage into a MBS fund violated procedural rules in the trust agreement because it did not take place before the closing date specified in the trust. FAC at 11. Plaintiff

---

[2] Note that the FAC states that the DOT was recorded on November 9, 2005, which is clearly erroneous because the mortgage was not executed until 2006. The attached DOT appears to have a recordation date of September 21, 2006. *See* FAC Ex. A, at 1.

alleges this violated the "Pooling and Serving [sic] Agreement" ("PSA") as well as the Mortgage Loan Purchase Agreement. FAC at 10.

Plaintiff entered into a loan modification agreement with Defendant GMAC on February 10, 2010. FAC at 14. Plaintiff alleges GMAC represented itself as the lender in her loan and "deceived" her based on her lack of knowledge between a servicer and a lender of a loan. *Id.* However, Greenpoint Mortgage, not GMAC, remained the stated lender on Plaintiff's deed of trust throughout this transaction. *Id.* Plaintiff argues that due to the failure to transfer the full and unencumbered interest in the mortgage loan from Greenpoint Mortgage to GMAC, Plaintiff's loan modification with GMAC is void. FAC at 14-15.

Furthermore, during April of 2011, MERS assigned the beneficial interest in the original deed to GMAC. FAC at 17. MERS' assignment of the deed of trust was notarized in Pennsylvania on April 15, 2011, which was three days before Plaintiff alleges it was signed by MERS' secretary. FAC at 18. Plaintiff contends that because Greenpoint Mortgage initially failed to properly assign and transfer the mortgage to the purchaser, MERS had no beneficial interest in the deed of trust. FAC at 17-18. Moreover, Plaintiff alleges that the discrepancy in signing dates was due to automatic computerized signing, or "robo-signing" by the company. FAC at 18. On April 18, 2011, MERS issued an assignment of deed of trust which was later recorded on April 26, 2011. FAC at 24-25. According to Plaintiff, this transfer occurred without ownership of the underlying note, and this transfer was an attempted "cover up" of previous improper transactions by the Defendants. FAC at 18, 24-25.

### B. Procedural Background

Moran filed her complaint in state court on September 4, 2013, which Defendants removed to federal court on October 25, 2013. ECF No. 1. On November 1, 2013, Defendants filed a Motion to Dismiss. ECF No. 7. Moran did not file a timely opposition to Defendants' Motion to Dismiss. Nearly four months after the opposition was due, the Court ordered Moran to show cause why the case should not be dismissed for failure to prosecute under Federal Rule of Civil Procedure 41(b). ECF No. 18. At the hearing on the order to show cause, the Court "noted that this is at least the fifth Northern District of California home foreclosure case [in the last two years] in which

3

Case No.: 13-CV-04981-LHK
CORRECTED ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Plaintiff's counsel has failed to oppose a first motion to dismiss. Thus, the Court gave Plaintiff's counsel notice that should Plaintiff's counsel fail to miss another deadline in this case, the Court would refer Plaintiff's counsel to the Northern District of California's Standing Committee on Professional Conduct and levy $1,000 in sanctions." ECF No. 27, Order Vacating Order to Show Cause and Granting Motion to Dismiss. The Court also granted Defendants' Motion to Dismiss for failure to oppose, and gave Moran leave to file an amended complaint. *Id*. However, the Court cautioned Moran that failure to cure the deficiencies identified in Defendants' Motion to Dismiss would result in a dismissal with prejudice. *Id*.

Moran timely filed the FAC on April 9, 2014, ECF No. 29, which the Defendants moved to dismiss on April 28, 2014, ECF No. 30 ("Mot."). Moran filed an opposition ("Opp."), ECF No. 32, and Defendants filed a reply ("Rep."), ECF No. 33. Defendants also filed a Statement of Recent Decision pursuant to Civ. L.R. 7-3(d)(2). ECF No. 35. Plaintiff's counsel responded with a new six page opposition, which is not authorized under the Civil Local Rules. *See* Civ. L.R. 7-3(d). The Court therefore STRIKES Moran's Opposition to Notice of New Authority.

## II.   LEGAL STANDARD

### A.   Motion to Dismiss

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering whether the complaint is sufficient to state a claim, the Court must accept as true all of the factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the Court need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). While a complaint need not allege detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief . . . [is] a

1  context-specific task that requires the reviewing court to draw on its judicial experience and

2  common sense." *Id.* at 679.

3        Claims sounding in fraud are subject to the heightened pleading requirements of Federal

4  Rule of Civil Procedure 9(b). A plaintiff alleging fraud "must state with particularity the

5  circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy this standard, the allegations

6  must be "specific enough to give defendants notice of the particular misconduct which is alleged to

7  constitute the fraud charged so that they can defend against the charge and not just deny that they

8  have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Accordingly,

9  claims sounding in fraud must allege "an account of the 'time, place, and specific content of the

10 false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v.*

11 *KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edward v. Marin Park, Inc.*, 356 F.3d

12 1058, 1066 (9th Cir. 2004)).

13     **B.**    **Leave to Amend**

14       If the Court determines that the complaint should be dismissed, it must then decide whether

15 to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend

16 "should be freely granted when justice so requires," bearing in mind that "the underlying purpose

17 of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or

18 technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation

19 marks omitted). Nonetheless, a court "may exercise its discretion to deny leave to amend due to

20 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure

21 deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [and]

22 futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir.

23 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

24 **III.**    **DISCUSSION**

25       The Court first analyzes a preliminary standing issue that affects eight of Plaintiff's nine

26 causes of action. In addition to standing, the Court identifies further deficiencies as alternative

27 bases to dismiss Plaintiff's causes of action for slander of title, fraud, fraud-based unfair

28

competition,[3] cancellation of instruments, and negligence. The Court will then address Plaintiff's remaining cause of action for violation of California Civil Code Section 2924.17.

### A.     Standing

To establish Article III standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). A suit brought by a plaintiff without Article III standing is not a "case or controversy," and an Article III federal court therefore lacks subject matter jurisdiction over the suit. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998). In that event, the suit should be dismissed under Federal Rule of Civil Procedure 12(b)(1). *See id.* at 109-10.

Eight of Plaintiff's causes of action are premised on the theory that Defendants failed to actually transfer ownership of her loan. Specifically, such causes of action are: (1) wrongful foreclosure, (2) quiet title, (3) slander of title, (4) fraud, (5) cancellation of instruments, (6) negligence, (7) unjust enrichment, and (8) unfair competition. For all of these claims, Plaintiff brings an action as a borrower asserting loss of her property, emotional distress, wrongfully paid mortgage payments, and damage to her credit from irregularities in the subsequent assignment of her loan. *See* FAC at 43. Defendants move to dismiss these causes of action on the basis that Plaintiff does not have standing. *See* Mot. at 4-5. As these arguments stem from the same theory, the Court consolidates the issues here. Note, however, that the Court addresses Plaintiff's "unlawful business act" unfair competition law ("UCL") claim separately at the end of this section because analysis of this UCL claim is somewhat more complex.

"Third-party borrowers lack standing to assert problems in the assignment of the loan" because the borrowers have not suffered an injury in fact. *Flores v. GMAC Mortg., LLC*, No. 12-

---

[3] Throughout this order, the Court refers to the California Business and Professions Code section 17200 by its common names, including "unfair competition," "unfair competition law," or "UCL."

6
Case No.: 13-CV-04981-LHK
CORRECTED ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

00794 SI, 2013 WL 2049388, at *3 (N.D. Cal. May 14, 2013); *see also Jenkins v. JP Morgan Bank, N.A.*, 216 Cal. App. 4th 497, 513-14 (2013); *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 272 (2011). Assignment defects do not injure borrowers because "[e]ven if there were some defect in the [subsequent] assignment of the deed of trust, that assignment would not have changed plaintiff's payment obligations." *Simmons v. Aurora Bank, FSB*, No. 13-00482 HRL, 2013 WL 5508136, at *2 (N.D. Cal. Sept. 30, 2013); *see Apostol v. CitiMortgage, Inc.*, No. 13-01983 WHO, 2013 WL 6328256, at *7-8 (N.D. Cal. Nov. 21, 2013); *Siliga v. Mortg. Elec. Registration Sys., Inc.*, 219 Cal. App. 4th 75, 85 (2013) ("The assignment of the deed of trust and the note did not change [Plaintiffs'] obligations under the note, and there is no reason to believe that . . . the original lender would have refrained from foreclosure in these circumstances.").

Here, Plaintiff has failed to specify an injury "fairly traceable to the challenged action of the defendant." *Friends of the Earth*, 528 U.S. at 180. Plaintiff does not contend that the *initial* securitization of her loan to Greenpoint Mortgage was improper. Because Plaintiff's obligation to repay her mortgage is unaffected by any assignment defects, the foreclosure—which is the injury alleged by Plaintiff—also remains unchanged by the alleged assignments defects. Therefore, even if a loss in property occurred, "the true victim was not plaintiff but the original lender, which would have suffered the unauthorized loss." *Fontenot*, 198 Cal. App. 4th at 272.

Plaintiff alleges that Defendant MERS robo-signed documents when assigning the deed of trust. FAC at 18. However, "robo-signing" of documents in the securitization and transfer process does not itself constitute harm to the borrower because it does not affect the foreclosure, which is the only injury suffered by the homeowner. *See Javaheri v. JP Morgan Chase Bank, N.A.*, No. 10-08185 ODW, 2012 WL 3426278, at *7 (C.D. Cal. Aug. 13, 2012) ("While the allegation of robo-signing may be true, the Court ultimately concludes that [Plaintiff] lacks standing to seek relief under such an allegation. . . . [T]he only injury [Plaintiff] alleges is the pending foreclosure on his home, which is the result of his default on his mortgage. The foreclosure would occur regardless of what entity was named as trustee, and so [Plaintiff] suffered no injury as a result of this substitution."). Plaintiff thus cannot claim to be the "true victim" of the alleged mistakes in the assignment process. *See Fontenot*, 198 Cal. App. 4th at 272 ("If [defendant] indeed lacked

authority to make the assignment, the true victim was not plaintiff but the original lender, which would have suffered the unauthorized loss . . . ."). Consequently, Plaintiff lacks standing to challenge the alleged irregularities in the assignment of her loan.

Moran relies entirely on a single case from the Court of Appeal for the Fifth District, *Glaski v. Bank of America National Ass'n*, 218 Cal. App. 4th 1079 (2013). *Glaski* held that a borrower, whose loan had been organized into a trust formed under New York law, had standing to challenge an assignment of his note because the defendants failed to assign the trust before the trust's closing date, creating a defect in the chain of transfer. *See id.* at 1096. The court in *Glaski* acknowledged "that some federal district courts sitting in California have rejected the post-closing date theory of invalidity on the grounds that the borrower does not have standing to challenge an assignment between two other parties." *Id*. at 1098 (citing *Aniel v. GMAC Mortg., LLC*, No. 12-04201 SBA, 2012 WL 5389706 (N.D. Cal. Nov. 2, 2012); *Almutarreb v. Bank of N.Y. Trust Co., N.A.*, No. 12-03061 EMC, 2012 WL 4371410 (N.D. Cal. Sept. 24, 2012)). However, the *Glaski* court concluded that "[t]hese cases are not persuasive because they do not address the principle that a borrower may challenge an assignment that is void and they do not apply New York trust law to the operation of the securitized trusts in question." *Id.* The court in *Glaski* explained that if the assignment of a trust was void, the defendant could not initiate a lawful foreclosure proceeding against the Plaintiff because it did not have a legal right to the property. *Id*. at 1095-97. The court then went on to find that the trust in *Glaski* was void under New York trust law. *Id*. at 1097. Because the assignment of the note was void, the defendant in *Glaski* was not the lawful holder of the plaintiff's deed of trust and could not initiate a foreclosure proceeding against the plaintiff. *Id.* at 1097-98. This gave the plaintiff standing to challenge the assignment despite being a third-party borrower. *See id*.

However, *Glaski* conflicts with several other California Courts of Appeal cases that have held that a mortgage borrower, as a third party, does not have a cause of action due to irregularities in the chain of transfer. *See, e.g.*, *Jenkins*, 216 Cal. App. 4th at 515 ("As an unrelated third party to the alleged securitization, and any other subsequent transfers of the beneficial interest under the promissory note, [Plaintiff] lacks standing to enforce any agreements, including the investment trust's pooling and servicing agreement, relating to such transactions."); *Fontenot*, 198 Cal. App.

8

4th at 272-73 (stating Plaintiff had no cause of action for merely alleging irregularities in the assignment process). The viewpoint expressed in *Glaski* is in the minority, and numerous other California appellate courts have declined to follow it, even where the trust at issue was organized under New York law. *See Yvanova v. New Century Mortg. Co.*, No. B247188, 2014 WL 2149797, at *5 (Cal. Ct. App. 2d Apr. 25, 2014) (declining to follow *Glaski*); *Sporn v. JP Morgan Chase Bank N.A.*, No. G047501, 2014 WL 280627, at *5 (Cal. Ct. App. 4th Jan. 27, 2014) (categorizing the holding in *Glaski* as a minority view and declining to follow it). "Moreover, courts in this District have expressly rejected *Glaski* and adhered to the majority view that individuals who are not parties to a PSA [Pooling and Serving Agreement] cannot base wrongful foreclosure claims on alleged deficiencies in the PSA/securitization process." *Apostol*, 2013 WL 6328256, at *7; *see also Giseke v. Bank of Am., N.A.*, No. 13-04772 JST, 2014 WL 718463, at *3 (N.D. Cal. Feb. 23, 2014) ("To the best of the Court's knowledge, no court has yet followed *Glaski* on this point, and many have pointedly declined to."); *Mottale v. Kimball Tirey & St. John, LLP*, No. 13-01160 GPC, 2014 WL 109354, at *4 (S.D. Cal. Jan. 10, 2014) ("[T]he weight of authority rejects *Glaski* as a minority view on the issue of a borrower's standing to challenge an assignment as a third party to that assignment."); *Flores*, 2013 WL 2049388, at *3 ("Even assuming, however, that there was some deficiency in MERS' assignment or substitution with respect to the deed of trust, plaintiffs do not have standing to assert . . . causes of action that they claim arise out of that deficiency.").

   *Glaski*'s reasoning is also unpersuasive. First, it is already well established that a third party should not be permitted to enforce covenants made for the benefit of others. *See, e.g.*, *Murphy v. Allstate Ins. Co.*, 17 Cal. 3d 937, 944 (1976) ("A third party should not be permitted to enforce covenants made not for his benefit, but rather for others. He is not a contracting party; his right to performance is predicated on the contracting parties' intent to benefit him."). In the context of home mortgages, neither the case law nor any statute creates a cause of action for individuals who have not suffered a distinct injury due to failures in the transfer of title. The obligations of a third party borrower to pay the original loan have not changed. *See Siliga*, 219 Cal. App. 4th at 85 ("The assignment of the deed of trust and the note did not change the [Plaintiffs'] obligations under the note, and there is no reason to believe that . . . the original lender would have refrained from

foreclosure in these circumstances."); *Jenkins*, 216 Cal. App. 4th at 515 ("'Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. . . . [A]n assignment merely substituted one creditor for another, without changing [Plaintiff's] obligations under the note.'") (quoting *Herrera v. Fed. Nat'l. Mortg. Ass'n.*, 205 Cal. App. 4th 1495, 1507 (2012)). Second, there is persuasive authority that the reasoning in *Glaski* is based on a flawed reading of New York trust law. New York state appellate courts have consistently found that an act in violation of a trust agreement is voidable, not void as *Glaski* held. *See, e.g.*, *In re Levy*, 893 N.Y.S.2d 142, 142 (N.Y. App. Div. 2010) (holding that a violation of a trust's procedural obligations to formally inform a beneficiary of a trustee did not void a trust); *Mooney v. Madden*, 597 N.Y.S.2d 775, 775 (N.Y. App. Div. 1993) (holding that a trustee excluding beneficiaries in a trust from voting in a matter violated the trust agreement but did not make the trust void); *see also Anh Nguyet Tran v. Bank of N.Y.*, No. 13-00580 RPP, 2014 WL 1225575, at *4 (S.D.N.Y. Mar. 24, 2014) ("[T]hough some courts have held that non-compliance with the terms of a PSA renders an assignment *void* under [the New York trust statute], the weight of the case law holds that such an assignment is merely *voidable,* and therefore outside the scope of that section."); *Banares v. Wells Fargo Bank, N.A.*, No. 13-04896 EMC, 2014 WL 985532, at *4-5 (N.D. Cal. Mar. 7, 2014) (criticizing *Glaski* for its flawed reading of New York trust law). Whether the assignment of a trust is void or only voidable is significant because a foreclosure proceeding involving a void trust assignment can be challenged on the basis that the foreclosing entity does not have a legal right to the property, whereas a voidable assignment can only be challenged by a directly injured party. *Glaski*, 218 Cal. App. 4th at 1095-97. Because the trust assignment in the instant case is merely voidable and not void, Plaintiff cannot challenge defects in the assignment because Plaintiff is not a directly injured party. In sum, Plaintiff's reliance on *Glaski* is misplaced because *Glaski* does not state the majority rule and its reasoning is unpersuasive. Thus, the Court follows the weight of the authority and finds that Plaintiff lacks standing to challenge the alleged assignment defects.

### 1. Plaintiff's claims for wrongful foreclosure, quiet title, slander of title, fraud, fraud-based unfair competition, cancellation of instruments, negligence, and unjust enrichment

Eight of Plaintiff's nine causes of action—Plaintiff's claims for wrongful foreclosure, quiet title, slander of title, fraud, fraud-based unfair competition, cancellation of instruments, negligence, and unjust enrichment—arise directly out of alleged assignment defects. The Court therefore follows numerous courts in this District and the California Courts of Appeal and dismisses these claims for lack of standing. *See Reyes-Aguilar v. Bank of Am., N.A.*, No. 13-05764 JCS, 2014 WL 2153792, at *8-10 (N.D. Cal. Mar. 20, 2014) (dismissing a slander of title action because errors in the securitization of a loan did not constitute by itself malice or injury to the Plaintiff); *Giseke*, 2014 WL 718463, at *4-5 (holding that wrongful foreclosure, quiet title, slander of title, and cancellation of instruments actions can be dismissed for lack of standing due to the Plaintiff being a third-party borrower); *Apostol*, 2013 WL 6328256, at *6-8 (holding that Plaintiff lacks standing to bring an action for wrongful foreclosure, quiet title, and negligence based purely on allegations of irregularities in subsequent transfer); *Dahnken v. Wells Fargo Bank, N.A.*, No. 13-02838 PJH, 2013 WL 5979356, at *2 (N.D. Cal. Nov. 8, 2013) (dismissing Plaintiff's action for wrongful foreclosure, quiet title, slander of title, fraud, cancellation of instruments, negligence, and unjust enrichment due to lack of standing); *Jenkins*, 216 Cal. App. 4th at 523 (dismissing fraud-based UCL claims for lack of standing).

### 2. "Unlawful business act" unfair competition

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. In addition to Plaintiff's allegations—dismissed for lack of standing above—that Defendants violated this section by engaging in the filing of fraudulent foreclosure documents and deceptive practices, Plaintiff also alleges that Defendants violated the UCL's "unlawful business act" prong based on predicate violations of six statutes.

Plaintiff lists, without pleading any specific legal elements or supporting facts, violation of California Penal Code sections 115 and 532f(a) and California Civil Code sections 1095, 1708, 1709, and 2923.5 as predicate violations for a UCL claim based on unlawful business conduct.

1    FAC at 56. Despite Plaintiff's failure to recite even a bare legal element of any of these claims, the

2    Court nonetheless substantively analyzes these allegations and dismisses them for lack of standing.

3    The Court first considers Plaintiff's allegations based upon California Civil Code sections 1708,

4    2923.5, and 1095, and then addresses Plaintiff's allegations based upon California Civil Code

5    section 1709 and California Penal Code sections 115 and 532f(a).

6          Plaintiff's allegations based upon California Civil Code sections 1708, 2923.5, and 1095 all

7    relate to Plaintiff's wrongful foreclosure claim and Plaintiff's general allegations that there were

8    defects in the assignment of her loan. California Civil Code section 1708 provides that "[e]very

9    person is bound, without contract, to abstain from injuring the person or property of another, or

10   infringing upon any of his rights." Cal. Civ. Code § 1708. California Civil Code section 2923.5

11   states that a "mortgagee . . . may not record a notice of default pursuant to [s]ection 2924 until . . .

12   30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due

13   diligence requirements . . . ." Cal. Civ. Code § 2923.5(a)(1). It also specifies the types of initial

14   contact required, including options to avoid foreclosure. *See* Cal. Civ. Code § 2923.5(a)(2).

15   California Civil Code Section 1095 states that "[w]hen an attorney in fact executes an instrument

16   transferring an estate in real property, he must subscribe the name of his principal to it, and his own

17   name as attorney in fact." Cal. Civ. Code § 1095. However, as a third party borrower, Plaintiff has

18   not suffered any injury from irregularities in the assignment process because her payment

19   obligations under the loan have not changed. *See Simmons*, 2013 WL 5508136, at *2; *Siliga*, 219

20   Cal. App. 4th at 85 ("The assignment of the deed of trust and the note did not change [Plaintiffs']

21   obligations under the note, and there is no reason to believe that . . . the original lender would have

22   refrained from foreclosure in these circumstances."). Accordingly, Plaintiff does not have standing

23   to bring a UCL claim based on predicate violations of these three statutes. *See Jenkins*, 216 Cal.

24   App. 4th at 523.

25         Plaintiff's remaining three UCL claims, which allege violations of California Civil Code

26   section 1709 and California Penal Code sections 115 and 532f(a) as predicate "unlawful business

27   acts," all relate to Plaintiff's fraud claim. The Court has already dismissed Plaintiff's fraud claim

28   and Plaintiff's fraud-based UCL claim for lack of standing. Thus, "even if we assume [Plaintiff]

. . . alleges facts indicating Defendants' actions violated at least one of the UCL's three unfair competition prongs (unlawful, unfair, or fraudulent), [Plaintiff] cannot show any of the alleged violations have a causal link to her economic injury." *Jenkins*, 216 Cal. App. 4th at 523; *see also Baldoza v. Bank of Am., N.A.*, No. 12-05966 JCS, 2013 WL 978268, at *2, 14 (N.D. Cal. Mar. 12, 2013) (dismissing Plaintiffs' section 1708 action together with their wrongful foreclosure action for lack of standing). Therefore, the court dismisses all of Plaintiff's "unlawful business act" UCL claims for lack of standing.[4]

### 3. Summary

In sum, the Court dismisses eight of Plaintiff's nine claims—all but Plaintiff's claim for violation of California Civil Code 2924.17—for lack of standing. Apart from standing, the Court now identifies additional and independent reasons to dismiss Plaintiff's causes of actions for slander of title, fraud, fraud-based unfair competition, cancellation of instruments, and negligence. The Court now turns to these alternative reasons for dismissal, and then addresses Plaintiff's claim under California Civil Code Section 2924.17.

### B.   Slander of title

"The recordation of an instrument facially valid but without underlying merit will give rise to an action for slander of title." *Stamas v. Madera*, 795 F. Supp. 2d 1047, 1068 (E.D. Cal. 2011). The elements of the slander of title tort are: "(1) a publication, (2) which is without privilege or justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss." *Manhattan Loft, LLC v. Mercury Liquors, Inc.*, 173 Cal. App. 4th 1040, 1051 (2009).

Plaintiff alleges that Defendants falsely and fraudulently made statements of ownership in assigning mortgages and substituting trustees. FAC at 45. She additionally asserts that "[t]he recording of the foregoing assignment of DOT, SOT, NOD and NOTS have cast a cloud on the title to her Property." FAC at 46.

---

[4] Because Plaintiff's UCL claims based on sections 115 and 532f(a) of the California Penal Code are dismissed for lack of standing, the Court need not reach the question of whether a plaintiff may allege a UCL "unlawful business act" violation based on predicate violations of the California Penal Code. *See Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 573 (1998) (applying a preemption analysis and finding that the criminal statute at issue did not foreclose related civil actions).

1    Plaintiff cannot establish the second element of her claim, i.e. that the publication is
2    "without privilege." All of the documents that Plaintiff identifies are foreclosure documents that
3    are privileged pursuant to California Civil Code section 2924(d). *See Madlaing v. JP Morgan*
4    *Chase Bank, N.A.*, No. 12-02069 LJO, 2013 WL 2403379, at *13-14 (E.D. Cal. May 31, 2013)
5    (dismissing Plaintiff's slander of title claim because foreclosure documents are privileged
6    communications). Section 2924(d) identifies, pursuant to Civil Code section 47, privileged
7    communications, among other things, as the "mailing, publication, and delivery" of foreclosure
8    notices and "performance" of foreclosure procedures. Cal. Civ. Code § 2924. Thus, in addition to
9    Plaintiff's lack of standing, the Court also grants Defendants' motion to dismiss Plaintiff's slander
10   of title claim on the grounds that section 2924(d) bars Plaintiff's claim for slander of title as the
11   publications upon which Plaintiff relies are privileged.

### C.    Fraud

To state a claim for fraud, a plaintiff must plead "'(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (quoting *Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 974 (Cal. 1997)). Under the federal rules, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). In other words, to state a claim for fraud, a plaintiff must plead "the who, what, when, where, and how" of the conduct charged. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

Plaintiff asserts several times, both as an independent cause of action and as a basis for every other claim, that the Defendants "conspired" in fraudulently producing mortgage documents and in initiating foreclosure proceedings. FAC at 46-47. However, Plaintiff alleges no supporting facts that give rise to a plausible claim that Defendants had the intent to defraud her or how the Defendants defrauded her. Plaintiff repeats the factual allegations supporting her claims for wrongful foreclosure (among others), but Plaintiff's specific allegations of fraud and conspiracy are entirely conclusory. *See, e.g.*, FAC at 47. Specifically, Plaintiff fails to plead *how* or *why* Defendants' actions were fraudulent. First, Plaintiff alleges multiple times that the Defendants took

out foreclosure insurance to "ensure" that the Plaintiff would default. FAC at 47 ("Defendants failed to advise Plaintiff that they would be taking out insurance to ensure that Plaintiff would default on their loan resulting in foreclosure."). Plaintiff further alleges that Defendants "knew at the time Plaintiff made the mortgage that the Bank planned to securitize the loan and the majority of loans in these default swaps result [sic] foreclosure, leaving homeowner homeless." *Id*. Yet, Plaintiff fails to plead any facts showing how or why the act of buying an insurance policy to protect the bank in the event of foreclosure is evidence of a scheme to "ensure" Plaintiff would default on her mortgage. *See id.*; *see, e.g.*, *Ward v. Wells Fargo Home Mortg.*, No. 14-00887 JCS, 2014 WL 1922082, at *6 (N.D. Cal. May 6, 2014) (holding that allegations a Defendant knew a loan would be likely to fail did not meet the Rule 9(b) requirements for fraud).

Later, Plaintiff attempts to plead fraudulent intent by stating: "Defendants' intention was to defraud Plaintiff from the onset of the mortgage. Taking out insurance to ensure default, charging late fees to increase debt." FAC at 47. However, Plaintiff pleads no facts to support her allegations that the charging of late fees was fraudulent. Finally, Plaintiff relies on the assertion that irregularities in the chain of transfer are evidence of fraudulent action. *See* FAC at 48-50 (alleging that Defendants filed false and fraudulent statements in the Santa Clara County Recorder's Office after their mistake in assigning Plaintiff's loan). Again, irregularities in the loan process are not fraudulent in themselves. *See Karimi v. GMAC*, No. 11-00926 LHK, 2011 WL 5914006, at *4 (N.D. Cal. Nov. 28, 2011) ("Plaintiff does not allege *who* at GMAC or ETS concealed *what* information and *when*. Nor does Plaintiff allege *how* the substitution of trustee or notice of default are "fraudulent" documents besides stating so in conclusory fashion."); *Fontenot*, 198 Cal. App. 4th at 272 ("[A]ssignments of debt, as opposed to assignments of the security interest incident to the debt, are commonly not recorded. The lender could readily have assigned the promissory note to HSBC in an unrecorded document that was not disclosed to plaintiff."); *see also Vess*, 317 F.3d at 1106. Accordingly, the FAC wholly lacks facts to support a plausible claim for fraud, much less the detailed factual pleading required by Federal Rule of Civil Procedure 9(b). Therefore, in addition to Plaintiff's lack of standing, the Court dismisses Plaintiff's fraud claim for failure to plead sufficient facts under Federal Rule of Civil Procedure 9(b).

Furthermore, Plaintiff alleges a violation of the UCL based on Defendants' "fraudulent business acts." Plaintiff's UCL claim is materially identical to her action for fraud; therefore, Plaintiff's fraud-based UCL claim is also dismissed for failure to state a claim. Section 17200 does not have the same pleading requirements as common law fraud. *See In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1118 (C.D. Cal. 2008). However, if a UCL claim is grounded in fraud, "the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Kearns*, 567 F.3d at 1127; *see Makreas v. First Nat. Bank*, 856 F. Supp. 2d 1097, 1102 (N.D. Cal. 2012). Because Plaintiff's "fraudulent business act" UCL claim is grounded in fraud, her UCL claim must also meet the heightened Rule 9(b) pleading standard for fraud. *See Ngoc Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1037-38 (N.D. Cal. 2010); *Lomboy v. SCME Mortg. Bankers*, No. 09-01160 SC, 2009 WL 1457738, at *6 (N.D. Cal. May 26, 2009) (applying Rule 9(b) requirements to section 17200). Consequently, as Plaintiff has failed to state a claim for fraud, she also fails to state a claim for violation of the UCL based on her fraud claim. *See Lomboy*, 2009 WL 1457738, at *6; *Nguyen*, 749 F. Supp. 2d, at 1037-38. In addition to lack of standing, Plaintiff's fraud-related UCL claim is also dismissed for failure to state a claim.

### D. Cancellation of Instruments

Plaintiff seeks to cancel the Note, Deed of Trust, Notice of Default and Sale, and various loan modification agreements and trustee deeds under California Civil Code section 3412. FAC at 53. Section 3412 provides a cause of action for the cancellation of instruments, stating: "[a] written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled." Cal. Civ. Code § 3412.

Plaintiff argues that Defendants, despite possessing the deed of trust, did not have recorded documents "showing any legally effective assignment" of the deed. FAC at 54. However, there is no "requirement under California law that the original note be produced to render the foreclosure proceedings valid." *Farner v. Countrywide Home Loans, Inc.*, No. 08-02193 BTM, 2009 WL 189025, at *2 (S.D. Cal. Jan. 29, 2009); *Neal v. Juarez*, No. 06-00055 NAJ, 2007 WL 2140640, at *8 (E.D. Cal. July 23, 2007) ("[An] allegation that the trustee did not have the original note or had

not received it is insufficient to render the foreclosure proceeding invalid.") (citing *R.G. Hamilton Corp. v. Corum*, 218 Cal. 92, 94, 97 (1933)). Therefore, because under California law, the trustee of a deed of trust has the power to initiate foreclosure proceedings, the fact that Defendants lacked a properly-assigned note is not a sufficient basis to cancel the agreements into which Plaintiff entered. *See Hafiz v. Greenpoint Mortg. Funding*, 652 F. Supp. 2d 1039, 1043 (N.D. Cal. 2009) ("California law does not require possession of the note as a precondition to non-judicial foreclosure under a deed of trust . . . Pursuant to section 2924(a)(1) of the California Civil Code the trustee of a Deed of Trust has the right to initiate the foreclosure process."). In addition to Plaintiff's lack of standing, the Court thus dismisses Plaintiff's claim for cancellation of instruments because there is no requirement to produce the original note to initiate foreclosure proceedings in California.

**E.     Negligence**

To state a claim for negligence, a plaintiff must allege: (1) the defendant's legal duty of care to the plaintiff; (2) the defendant's breach of duty; (3) injury to the plaintiff as a result of the breach; and (4) damage to the plaintiff. *See Hoyem v. Manhattan Beach City Sch. Dist.*, 22 Cal. 3d 508, 513 (1978). If no duty exists, there cannot be a cause of action for negligence. *See J'Aire Corp v. Gregory*, 24 Cal. 3d 799, 803 (1979). Plaintiff alleges that Defendant GMAC exceeded its role as a lender in offering the possibility of a loan modification and "falsely represented" itself as a valid lender. FAC at 58.

A financial institution owes no duty of care to a borrower when engaged in activity that falls within its traditional role as a lender of money. *See Nymark v. Heart Fed. Savings & Loan Ass'n.*, 231 Cal. App. 3d 1089, 1095-97 (1991). Plaintiff states she entered into a standard loan modification agreement with Defendant GMAC. FAC at 14. Courts are clear that the mere agreement to modify a loan does not go beyond the traditional actions of a financial institution. *See Meyer v. Wells Fargo Bank, N.A.*, No. 13-03727 WHA, 2013 WL 6407516, at *5 (N.D. Cal. Dec. 6, 2013) ("The vast majority of courts in this district have found that merely *engaging* in the loan modification process is a traditional money lending activity.") (emphasis in original); *Morgan v. U.S. Bank Nat'l. Ass'n*, No. 12-03827 CRB, 2013 WL 684932, at *3 (N.D. Cal. Feb. 25, 2013)

17
Case No.: 13-CV-04981-LHK
CORRECTED ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

("[A] lender undertakes no new duty by offering a loan modification."). Because Plaintiff has failed to allege that any of the Defendants have acted beyond their traditional role as a lender of money, Defendants owe no duty of care to Plaintiff. Because Plaintiff cannot establish the first element of a claim for negligence, i.e., that the Defendants had a duty of care to the Plaintiff, Plaintiff cannot state a claim for negligence. Therefore, in addition to Plaintiff's lack of standing, the Court also dismisses Plaintiff's claim for negligence because Defendants do not owe Plaintiff a duty of care.

### F. Violation of California Civil Code Section 2924.17

California Civil Code sections 2924.17(a) and 2924.17(b) (part of the Homeowner Bill of Rights or "HBOR") provide a private cause of action for multiple and uncorrected recoding and filing violations. *See* Cal. Civ. Code § 2924.17; *Rockridge Trust v. Wells Fargo*, 985 F. Supp. 2d 1110, 1148-49 (N.D. Cal. 2013) (noting that section 2924.17 is part of the Homeowner Bill of Rights). Plaintiff alleges that the Defendants failed to comply with these provisions by using inaccurate and fraudulent documents. FAC at 55.

Plaintiff's claim fails because the HBOR cannot be applied retroactively. *See Rose v. J.P. Morgan Chase, N.A.*, No. 12-00225 WBS, 2014 WL 546584, at *8 (E.D. Cal. Feb 11, 2014); *McGough v. Wells Fargo Bank, N.A.*, No. 12-00050 TEH, 2012 WL 5199411, at *5 n.4 (N.D. Cal. 2012) ("[T]here is no indication that the law is intended to be, or will be, applied retroactively."); *see generally Myers v. Philip Morris Cos.*, 28 Cal. 4th 828, 841 (2002) ("[U]nless there is an express retroactivity provision, a statute will *not* be applied retroactively unless it is *very clear* from extrinsic sources that the Legislature . . . must have intended a retroactive application" (emphasis in original, internal quotations omitted)). Section 2924 is part of the Homeowner Bill of Rights (HBOR), which took effect on January 1, 2013. *Rockridge Trust*, 985 F. Supp. 2d at 1152-53. All of the actions Plaintiff alleges violated section 2924.17 took place before 2013. FAC at 2-5. Consequently, Plaintiff has no cause of action for a violation of section 2724.17. *See McFarland v. JP Morgan Chase Bank*, No. 13-01838 JGB, 2014 WL 1705968, at *5-6 (C.D. Cal. Apr. 28, 2014).

### G.     Leave to Amend

"[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). Eight of Plaintiff's nine causes of action—Plaintiff's claims for wrongful foreclosure, quiet title, slander of title, fraud, cancellation of instruments, negligence, unjust enrichment, and unfair competition—are premised on a fundamental legal defect, i.e., Plaintiff lacks standing to assert her claims arising out of assignment defects in the transfer of her loan. Any additional facts Plaintiff may allege cannot overcome this flaw. Moreover, the Court has also identified additional legal defects in several of these causes of action. Thus, amendment of these claims would be futile, and the Court will not grant leave to amend these claims.

Plaintiff's claim under Section 2924.17, her California Homeowner Bill of Rights claim, cannot survive as a matter of law either. The HBOR cannot be applied retroactively, and the entire timeline of events Plaintiff cites in her First Amended Complaint occurred before the statute took effect. Granting Plaintiff leave to amend her HBOR claim would therefore also be futile, and the Court will not grant leave to amend this claim.

Moreover, in addition to the fundamental legal defects in all of Plaintiff's claims, Plaintiff is not entitled to leave to amend because of her "'repeated failure to cure deficiencies by amendments previously allowed.'" *Carvalho*, 629 F.3d at 892 (quoting *Foman*, 371 U.S. at 182). The Court previously cautioned Moran that failure to cure the deficiencies identified in Defendants' Original Motion to Dismiss would result in a dismissal with prejudice. ECF No. 27. Yet, Plaintiff's allegations in her FAC are virtually unchanged from her Original Complaint, save for the addition of two defendants. *See* ECF No. 1; FAC at 47. Similarly, Defendants' Motion to Dismiss the FAC and their Original Motion to Dismiss are nearly verbatim identical. *See* ECF No. 7; Mot. at 17. Therefore, because Plaintiff has made no attempt to address the deficiencies identified in Defendants' Original Motion to Dismiss, the Court denies Plaintiff leave to amend.

In sum, all of Plaintiff's claims are dismissed with prejudice, both because leave to amend would be futile, and because Plaintiff has failed to cure the deficiencies identified in the Original Complaint. *See Foman*, 371 U.S. at 182; *Carvalho*, 629 F.3d at 892-93.

### III. CONCLUSION

The Court finds that Plaintiff's FAC fails to state a claim that entitles her to relief. Accordingly, the Court GRANTS Defendants' Motion to Dismiss. All causes of action in the FAC are dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: August 5, 2014

_____
LUCY H. KOH
United States District Judge